ANABIS VEGA RIVERA, recurrida, *v.* RAFAEL A. SOTO SILVA, peticionario.

*Número:* CC-2003-194 *Resuelto:* 8 de marzo de 2005

*Xaira Santiago Acosta* y *Rafael A. Soto Silva,* abogados de la parte peticionaria; *Rina Biaggi García, Ivette Nieves Cordero* y *Carmen Irene García Goyco,* abogadas de la parte recurrida.

LA JUEZ ASOCIADA SEÑORA RODRÍGUEZ RODRÍGUEZ emitió la opinión del Tribunal.

Nos corresponde determinar en esta ocasión si las aportaciones al Seguro Social hechas por un cónyuge, vigente el matrimonio, tienen la naturaleza de bien ganancial y deben incluirse en el inventario de la sociedad legal de gananciales para su colación al momento de su liquidación.

I

Los hechos en este caso son sencillos y sobre ellos no hay controversia. La Sra. Anabis Vega Rivera y el Sr. Rafael Soto Silva contrajeron matrimonio el 12 de junio de 1959 en Puerto Rico. Durante su matrimonio, procrearon tres hijos, hoy todos mayores de edad. Treinta y nueve años más tarde, las partes pusieron fin a su matrimonio, decretándose disuelto mediante sentencia de divorcio el 10 de marzo de 1999.

Posterior a ello, la señora Vega instó una demanda de liquidación de la sociedad de bienes gananciales ante el

Tribunal de Primera Instancia, Sala Superior de Bayamón. En la demanda instada se detallaron extensamente los haberes de la sociedad de gananciales a liquidarse. El demandado contestó la demanda y aceptó algunas de las alegaciones y negó otras; además, reconvino.

Luego de varios incidentes procesales que no es necesario detallar, en diciembre de 2001 la señora Vega Rivera solicitó al tribunal que incluyera en el inventario del caudal ganancial sujeto a liquidación las aportaciones hechas por su ex cónyuge al Seguro Social federal durante la vigencia del matrimonio. Traída la controversia ante la consideración del tribunal, éste ordenó a las partes que se expresaran por escrito sobre la solicitud presentada.

En un extenso memorando, el señor Soto Silva planteó que la solicitud de la señora Vega Rivera era contraria a derecho, ya que la legislación federal que creaba el Seguro Social y su jurisprudencia interpretativa impedían que los estados interfirieran con los beneficios que concede este programa. El demandado invocó *Hisquierdo v. Hisquierdo*, 439 U.S. 572 (1979) (*Hisquierdo*), para concluir que la legislación federal desplazaba la normativa estatal e impedía una determinación bajo los términos solicitados por la señora Vega Rivera.

Oportunamente, el tribunal de instancia celebró una vista para discutir la petición de la señora Vega Rivera. El 18 de octubre de 2002, el tribunal *a quo* dictó su resolución en la cual dispuso que las aportaciones al Seguro Social eran un bien ganancial y ordenó, por lo tanto, que se incluyeran en el inventario del caudal ganancial. En la resolución dictada, el foro de instancia no hizo referencia alguna al planteamiento del señor Soto Silva sobre el desplazamiento de nuestra normativa por la legislación federal.

Insatisfecho, Soto Silva acudió en petición de *certiorari* ante el Tribunal de Apelaciones. En su escrito recreó los mismos planteamientos que en el tribunal de instancia. El

Tribunal de Apelaciones dictó una escueta resolución en la cual se negó a expedir el recurso solicitado al indicar que "el recurso de *certiorari* no aduce ninguno de los criterios enunciados en la Regla 40 del Reglamento para su expedición," y que la determinación de instancia era "esencialmente" correcta.

Por no estar conforme con lo resuelto por el foro apelativo intermedio, el 14 de marzo de 2003 Soto Silva acudió ante nosotros. En el escrito presentado señaló como error lo siguiente:

> Erró el Tribunal de Circuito de Apelaciones al evaluar todo el récord del caso, justipreciar los [memorando] y estimar que lo resuelto por el Tribunal de Primera Instancia es esencialmente correcto, [colacionar los pagos al seguro social a los activos gananciales para luego adjudicar derechos sobre ellos en la liquidación, aun cuando en Derecho el campo está ocupado], no hace determinaciones de hech[o] ni conclusiones de derecho, pero aplica la Regla 40 del Reglamento del Tribunal de Circuito de Apelaciones. Petición de *certiorari*, pág. 4.

Expedimos el auto solicitado y, contando con la comparecencia de las partes, resolvemos.

## II

A. A primera vista, tenemos ante nosotros una nueva controversia sobre el carácter —ganancial o privativo— de las aportaciones a un plan de retiro, de pensiones o beneficios, hechas por un cónyuge durante la vigencia del matrimonio. Lo cierto es, sin embargo, que antes de atender esta controversia tenemos que analizar cómo nuestro derecho de relaciones de familia interrelaciona con la legislación federal que crea el programa de Seguro Social. Debemos determinar si el *Social Security Act* desplaza nuestra legislación en virtud de la cláusula de supremacía de la

Constitución de Estados Unidos. Art. VI, Const. E.E. U.U., L.P.R.A., Tomo 1.(¹)

■ La doctrina del desplazamiento del poder estatal por el poder federal que invoca el peticionario plantea un asunto de umbral. La primacía del derecho estatal en el ámbito de las relaciones de familia tiene que ceder ante el principio de la supremacía de las leyes del Congreso cuando una ley federal así lo ordena al ocupar expresamente el campo, o cuando la ley estatal incide sustancialmente sobre la política pública que establece el Congreso en alguna legislación. *Hines v. Davidowitz*, 312 U.S. 52 (1941); *Pennsylvania v. Nelson*, 350 U.S. 497 (1956), y su progenie. Véanse, además: *Rodríguez v. Overseas Military*, 160 D.P.R. 270 (2003); *S.L.G. v. S.L.G.*, 150 D.P.R. 171 (2000); *Cotto Morales v. Ríos*, 140 D.P.R. 604 (1996); *Bordas & Co. v. Srio. de Agricultura*, 87 D.P.R. 534, 552–553 (1963); R. Serrano Geyls, *Derecho constitucional de Estados Unidos y Puerto Rico*, 2da ed., Universidad Interamericana, 2000, Vol. I, pág. 410; L.H. Tribe, *American Constitutional Law*, 3ra ed., Nueva York, Ed. Foundation Press, 2000, Vol. 1, Secs. 6.28-6.30.

*Hisquierdo*, invocado por el peticionario en apoyo a su argumento de desplazamiento, es la primera decisión del Tribunal Supremo de Estados Unidos que considera la divisibilidad de un plan de beneficios del Gobierno federal.(²) El caso giró en torno al plan de retiro establecido por el Congreso para empleados del sistema de ferrocarriles, conocido como el *Railroad Retirement Act*, 45 U.S.C.A. sec. 231 *et seq.*, y una determinación del Tribunal Supremo de

---

(¹) Es inquietante que un argumento de esta importancia haya sido ignorado tanto por el Tribunal de Primera Instancia como por el Tribunal de Apelaciones.

(²) Véanse, además: *McCarty v. McCarty*, 453 U.S. 210 (1981); *Mansell v. Mansell*, 490 U.S. 581 (1989). En *McCarty*, el Tribunal Supremo, construyendo sobre *Hisquierdo v. Hisquierdo*, 439 U.S. 572 (1979) (*Hisquierdo*), revocó la determinación de que la pensión por retiro de un miembro de las fuerzas armadas era propiedad en común del matrimonio, por lo tanto era divisible. Por otro lado, en *Mansell* se resolvió que la pensión por incapacidad de un miembro de las fuerzas armadas no era propiedad en común del matrimonio, por lo tanto no era divisible.

California que concluía que los beneficios concedidos por ese plan eran propiedad en común (*community property*) de ambos cónyuges, sujeto a división en el divorcio.

█ Al analizar el argumento de desplazamiento, el Tribunal Supremo diseñó el siguiente modelo de análisis dual.([3]) Primero, hay que determinar si el derecho invocado —la naturaleza de propiedad en común de los beneficios del plan de pensión— choca con las disposiciones de la legislación federal. *Hisquierdo*, supra, pág. 583. Segundo, determinada la existencia del conflicto, hay que evaluar si aplicar el derecho estatal inflige grave daño a intereses claros y sustanciales del Congreso. Íd., pág. 581.

Establecido ese marco conceptual, el Tribunal Supremo pasó a analizar la controversia y determinó que la llamada cláusula antiembargo (*anti-attachment clause*) del *Railroad Retirement Act* chocaba directamente con el derecho de California. Véase 45 U.S.C.A. sec. 231m.([4]) El tribunal señaló que el propósito de este tipo de cláusula era garantizar que cualquier beneficio concedido por ley lo recibiera íntegramente el beneficiario. Indicó el tribunal:

> Like anti-attachment provisions generally ... it ensures that the benefits actually reach the beneficiary. It pre-empts all state law that stands in its way. *Hisquierdo*, supra, pág. 584.

De ahí se concluye, lógicamente, que la decisión del tribunal de California de que los beneficios del plan de pen-

---

([3]) Para una discusión más abarcadora sobre el modelo de análisis diseñado en *Hisquierdo* para determinar si aplica o no la doctrina del campo ocupado, véanse: J.A. Riddle, *Preemption of Reconcilable State Regulation: Federal Benefit Schemes v. State Marital Property Law*, 34 Hastings L.J. 685, 697 (1982) (*"Hisquierdo* established an unprecedented standard for preemption disputes involving state marital property law"); Quirk, *State Community Property Laws: Coping with Federal Tax and Pension Laws*, 19 Gonz. L. Rev. 481 (1984).

([4]) Esta sección dispone, en lo pertinente:

"[N]otwithstanding any other law of the United States, or of any State, territory, or the District of Columbia, no annuity or supplemental annuity shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever, nor shall the payment thereof be anticipated."

sión le pertenecían también al cónyuge no pensionado era contraria a la cláusula antiembargo, pues impedía que el beneficiario recibiera la totalidad de su pensión. *Hisquierdo*, supra, pág. 585.

El tribunal pasó luego a analizar si la normativa estatal infligía grave daño a intereses claros y sustanciales legislados por el Congreso en el *Railroad Retirement Act*, contestando la interrogante en la afirmativa. Con la aprobación del *Railroad Retirement Act*, el Congreso tuvo la intención de legislar un programa que sirviera de aliciente a los empleados de mayor antigüedad en el sistema ferroviario para que se acogiesen al retiro, permitiendo así la renovación de la fuerza trabajadora. Por lo tanto, si un empleado retirado tenía que compartir su plan de pensión con su ex cónyuge, el incentivo para su retiro se vería afectado, lo que frustraba la intención que tuvo el Congreso al aprobar el *Railroad Retirement Act. Hisquierdo*, supra, pág. 590. Este daño, que penalizaba a quien el Congreso pretendió proteger, era lo suficientemente grave para que se entendiera que la legislación federal desplazaba el derecho de relaciones de'familia de California. A base del anterior análisis, se concluyó que el pago de la pensión era un bien privativo no sujeto a división.

Al aplicar a este caso el análisis de desplazamiento de *Hisquierdo*, se requiere que se determine, primero, si el derecho estatal invocado —el carácter ganancial de las aportaciones al Seguro Social— es contrario a lo dispuesto en la cláusula antiembargo del *Social Security Act*,([5]) o a cualquier otra disposición del estatuto federal. De contes-

---

([5]) La cláusula antiembargo del *Social Security Act* dispone:

"*[Section] 407. Assignment [of benefits.]*

"(a) [In general]

"The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law." 42 U.S.C.A. sec. 407(a).

tarse esa pregunta en la afirmativa, se pasaría a evaluar si la determinación de ganancialidad de las aportaciones al Seguro Social inflige grave daño a intereses sustanciales del Congreso, según recogidos en la legislación federal. De lo contrario, el análisis del campo ocupado concluye con una respuesta en la negativa a la primera pregunta.

Antes de hacer ese análisis, pasemos a ver cómo los estados han aplicado *Hisquierdo* a controversias relacionadas con el Seguro Social y la división de los haberes del matrimonio ante un divorcio.

B. Debemos destacar, inicialmente, que el Tribunal Supremo federal no ha resuelto específicamente si los beneficios concedidos bajo el Seguro Social pueden ser divididos al momento de liquidarse los bienes del matrimonio. B.R. Turner, *Equitable Distribution of Property*, 2da ed., Colorado, McGraw-Hill, 1994, Sec. 6.06, pág. 317 ("The Supreme Court has not yet considered whether Social Security benefits are subject to division upon divorce"). Así, pues, los tribunales estatales lo que han hecho es extrapolar el análisis de *Hisquierdo* al contexto de reclamaciones bajo el *Social Security Act*.

La mayoría de los tribunales estatales han resuelto que, en efecto —a la luz de lo establecido en *Hisquierdo*— los beneficios del Seguro Social son privativos del beneficiario y no acrecen la masa conyugal, por lo que no están sujetos a división en ocasión de un divorcio.[6] Sostienen estos tribunales que considerar de alguna manera el valor de ese beneficio al dividir los bienes del matrimonio contraviene la ley federal, ya que ello resulta, necesariamente, en una división directa o indirecta de los bienes, contrario a lo

---

[6] Véanse, entre otros: *In re Marriage of Rogers*, 2004 WL 2341836 (Ill. App. 4 Dist.); *In re Marriage of Crook*, 778 N.E.2d 309 (Ill. 2002); *Kelly v. Kelly*, 9 P.3d 1046 (Ariz. 2000); *Wolff v. Wolff*, 929 P.2d 916 (1997); *In re Marriage of Boyer*, 538 N.W.2d 293 (Iowa 1995); *Olson v. Olson*, 445 N.W.2d 1 (N.D. 1989); *Crocker v. Crocker*, 824 P.2d 1117 (Okla. 1991); *Powell v. Powell*, 577 A.2d 576 (Pa. 1990); *Mann v. Mann*, 778 P.2d 590 (Alaska 1989); *Richard v. Richard*, 659 S.W.2d 746 (Tex. 1983).

dispuesto en la cláusula antiembargo del *Social Security Act.*

Otros tribunales estatales han concluido que aun cuando estos beneficios son de carácter privativo, son un factor que puede ser considerado al momento de dividir los bienes del matrimonio. Estos tribunales han dispuesto que los principios que informan la doctrina del *Equity* así lo permite. Sostienen que para dividir conforme a la equidad y la justicia la propiedad del matrimonio (*equitable distribution*), es apropiado considerar todos los bienes y recursos acumulados durante éste, lo que incluye, necesariamente, los beneficios del Seguro Social.[7] Véase Turner, *op. cit.*, pág. 318 ("State courts may consider Social Security benefits as one relevant factor in dividing other marital assets").[8]

■ De lo anterior surge que la normativa en Estados Unidos es uniforme en cuanto al carácter privativo de los *beneficios* que se reciben bajo el Seguro Social. Y lo cierto es que tiene que ser así, ya que la cláusula antiembargo del *Social Security Act* prohíbe la cesión o transferencia del *derecho a recibir pagos futuros* y prohíbe, además, que los *pagos recibidos o por recibirse o derechos reconocidos bajo el estatuto* puedan estar sujetos a gravámenes, embargos o procesos legales.[9] Este lenguaje es claro; la intención del legislador fue que el beneficiario recibiese la totalidad de la pensión o renta a la que tiene derecho. Así, conforme lo

---

(7) Véanse, *e.g.*: *Neville v. Neville*, 791 N.E.2d 434 (Ohio 2003); *In re Marriage of Zahm*, 955 P.2d 412 (Wash. 1998); *Mahoney v. Mahoney*, 681 N.E.2d 852 (Mass. 1997); *In re Marriage of Miller*, 475 N.W.2d 675 (Iowa 1991); *Pongonis v. Pongonis*, 606 A.2d 1055 (Me. 1992); *Hogan v. Hogan*, 796 S.W.2d 400 (Mo. 1990); *In re Marriage of Meyer*, 430 N.E.2d 610 (Ill. 1981); *Karr v. Karr*, 628 P.2d 267 (Mont. 1981), *cert.* denegado, 455 U.S. 1016 (1982).

(8) Para un resumen sobre los modelos que existen en Estados Unidos para la división de los bienes acumulados durante el matrimonio, véanse: C.J. Frantz y H. Dagan, *Properties of Marriage*, 104 (Núm. 1) Col. L. Rev. 75 (2004); M.J. Vaughn, *The Policy of Community Property and Inter-Spousal Transactions*, 19 Baylor L. Rev. 20, 20–27 (1967); W. Reppy y C. Samuel, *Community Property in the United States*, 2da ed., Virginia, Michie, 1982.

(9) Véase esc. 5.

resuelto en *Hisquierdo*, esta cláusula antiembargo claramente implica que estos beneficios o pagos son privativos y, por lo tanto, no se pueden afectar por ninguna determinación de los estados; sobre esto, el campo está ocupado.([10])

Esta disposición, sin embargo, no hace referencia a *las aportaciones* que hace un beneficiario al fondo del Seguro Social. Por lo tanto, una determinación sobre la naturaleza de esas aportaciones no está prohibida por la cláusula antiembargo. Por otro lado, hemos analizado el *Social Security Act* y no hemos encontrado ninguna disposición que nos impida analizar la naturaleza de las aportaciones. Tampoco hemos encontrado jurisprudencia federal o estatal que aborde este tema. A base de lo anterior, hay que concluir que, en este caso, el análisis de desplazamiento de *Hisquierdo* concluye luego de evaluar la primera parte de ese modelo de análisis dual. No existe, entonces, impedimento alguno para que *se evalúe la naturaleza de las aportaciones al Seguro Social.*

Cabe destacar aquí que el complejo esquema que regula los beneficios del Seguro Social contempla la interrelación de la legislación federal con el derecho sustantivo de los estados. Veamos algunos ejemplos: La determinación de quién está válidamente casado para cualificar para los beneficios del Seguro Social es una determinación que se hace a base del derecho del estado. 42 U.S.C.A. sec. 416(h)(1)(A)(i). De igual forma, es la ley estatal la que determina quién, a pesar de no estar legalmente casado, goza de los mismos derechos que los cónyuges, por lo que puede recibir los beneficios del Seguro Social. 42 U.S.C.A. sec. 416(h)(1)(A)(ii). Si el beneficiario es un hijo adoptivo, la

---

([10]) Cabe señalar que, a pesar de los rigores de la cláusula antiembargo del *Social Security Act*, en 1975 el Congreso enmendó la legislación para permitir que de los pagos mensuales del beneficiario se pudiera satisfacer el pago de la pensión del cónyuge (*alimony*) y la pensión alimentaria de hijos dependientes (*child support*). Véase 42 U.S.C.A. sec. 659. Con esa enmienda se quiso corregir el problema de padres que, abusando de la cláusula antiembargo, no cumplían con su responsabilidad alimentaria para con sus hijos y ex cónyuges. P.L.93–647, *Social Services Amendments of 1974*, Senate Report No. 93–1356, Dec. 14, 1974.

determinación sobre la validez de esa adopción se hace a base del derecho del estado sobre este asunto. 42 U.S.C.A. sec. 416(e)(2)(B). Finalmente, es la ley estatal la que regula varios aspectos relacionados con la determinación de pensión alimentaria del ex cónyuge (*alimony*) y al recobro de intereses por temeridad, gastos y costas. 42 U.S.C.A. sec. 659.

■ Resulta evidente, entonces, que el *Social Security Act* permite y contempla la correlación de sus disposiciones con el derecho sustantivo de los estados en asuntos relacionados con las relaciones de familia. Ello debe ser así porque, de ordinario, el derecho de relaciones de familia es un asunto reservado a los estados y no de la injerencia del Gobierno federal. *E.g., In re Burrus*, 136 U.S. 586, 593–594 (1890) ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States"). Véanse, además: *United States v. López*, 513 U.S. 549, 564 (1995); *Thompson v. Thompson*, 484 U.S. 174 (1988); *Sosna v. Iowa*, 419 U.S. 393 (1975).

■ Para resumir, de lo anterior se desprende: Primero, a base de la interpretación del Tribunal Supremo de Estados Unidos de las cláusulas antiembargo en *Hisquierdo*, cualquier plan de pensión, anualidad o retiro establecido por legislación federal que contenga una cláusula de esta naturaleza —como es el caso del Seguro Social— los *beneficios que se reciben* tienen carácter privativo y no se podrán dividir entre los cónyuges cuando se liquiden los bienes del matrimonio. Este es un asunto en el que claramente el campo está ocupado por la legislación federal y no hay margen de acción alguno para aplicar una norma en contrario. Segundo, que esos mismos beneficios, bajo la doctrina del *Equity*, sí se pueden tomar en cuenta al momento de hacer una división equitativa de los haberes del matrimonio. Tercero, que ni el Tribunal Supremo federal ni las cortes estatales se han expresado sobre el carácter de

*las aportaciones* hechas vigente el matrimonio a un plan de pensión, de retiro o anualidad establecido mediante legislación federal, incluyendo el Seguro Social. Cuarto, que el *Social Security Act* no contiene ninguna disposición que impida se analice el carácter de las aportaciones que se hacen al fondo de Seguro Social. Y, por último, que el *Social Security Act* contempla la interrelación entre sus disposiciones con la legislación estatal relacionada con el derecho de familia.

Resolvemos entonces que la doctrina del campo ocupado no constituye un impedimento para que evaluemos si, a la luz del derecho sustantivo puertorriqueño, las aportaciones hechas al Seguro Social se pueden considerar como un bien ganancial y, además, que deben incluirse en la masa que se divida cuando se liquide la sociedad legal de gananciales. Ese análisis, sin embargo, requiere no tan sólo que repasemos el estado de derecho prevaleciente en Puerto Rico sobre este asunto, sino, y más importante aún, que profundicemos sobre el programa del Seguro Social y su funcionamiento.

Veamos entonces cuál es el estado de derecho vigente en nuestra jurisdicción sobre la naturaleza de las aportaciones a un plan de retiro o pensión, para luego atender la controversia que se nos ha planteado a la luz del sistema creado por el *Social Security Act*.

## III

En los últimos años hemos ido matizando el contenido y alcance de las disposiciones del Código Civil que regulan el inventario y la liquidación de la sociedad legal de gananciales. Las operaciones fundamentales de la liquidación son las siguientes: la formación de inventario; la tasación de los bienes; la determinación del pasivo de la sociedad y, en su caso, el establecimiento de formas para su pago; la fijación del remanente líquido y su distribución y,

finalmente, la adjudicación de bienes, por partes iguales, para su pago. El inventario deberá contener numéricamente, para su colación, las cantidades que haya pagado la sociedad de gananciales que se deban rebajar del capital del marido o de la mujer. Art. 1317 del Código Civil, 31 L.P.R.A. sec. 3692. Véase, además, A. De Cossio y Corral, *Tratado práctico y crítico del Derecho Civil*, Madrid, [s. Ed.], 1963, T. L, Vol. I, págs. 254–255.

Hemos resuelto que, aun cuando el Art. 1301 del Código Civil, 31 L.P.R.A. sec. 3641, dispone que son bienes gananciales los adquiridos a título oneroso durante el matrimonio a costa del caudal, o aquellos obtenidos por la industria, sueldo o trabajo de los cónyuges, existen ciertos bienes que por razón de su finalidad y naturaleza personalísima no acrecen el haber común. Específicamente, hemos exceptuado de la norma general las pensiones por retiro y otros sistemas similares. *E.g., Maldonado v. Tribunal Superior*, 100 D.P.R. 370 (1972) (*Maldonado*); *Rosa Resto v. Rodríguez Solís*, 111 D.P.R. 89, 92 (1981) (*Rosa Resto*); *Delucca Román v. Colón Nieves*, 119 D.P.R. 720 (1987); *Benítez Guzmán v. García Merced*, 126 D.P.R. 302 (1990); *Pilot Life Ins. Co. v. Crespo Martínez*, 136 D.P.R. 624 (1994). En *Maldonado*, supra, pág. 375, caso normativo sobre este asunto, explicamos la norma al señalar:

> La doctrina considera que la naturaleza personalísima de estas anualidades determinan su carácter privativo. Se trata de créditos *intuitu personae* —esto es en consideración a la persona— que, por su propia naturaleza, están excluidos de la masa común.

Es esta naturaleza personalísima lo que determina su carácter privativo. En *Maldonado*, supra, pág. 377, concluimos que, independientemente del modo de adquisición, "el derecho a la anualidad por retiro es uno personalísimo que nunca acrece el haber común".

Posteriormente, en *Rosa Resto*, supra, pág.

92, nos reafirmamos en lo expresado en *Maldonado* y abundamos sobre la naturaleza personalísima de las pensiones por retiro. Indicamos que este derecho tiene un respetable contenido ético y moral, y

> ... constituye un seguro de dignidad para el hombre o la mujer que habiendo dedicado al servicio público sus años fecundos, no debe encontrarse en la etapa final de su vida en el desamparo, o convertido en una carga de parientes o del Estado.

En *Rosa Resto* resolvimos que con arreglo a lo dispuesto en el inciso (2) del Art. 1301 del Código Civil, 31 L.P.R.A. sec. 1301(2), las aportaciones que un cónyuge pensionista hace a su plan de retiro, vigente el matrimonio, son de naturaleza ganancial, por lo que la sociedad de gananciales tiene derecho a un crédito por el importe total de esas aportaciones al momento de su disolución. Aclaramos en *Rosa Resto*, supra, pág. 95, que si el único bien existente para satisfacer la parte adjudicada eran los fondos de aportaciones acumuladas en el plan de retiro, "quedará diferido el cumplimiento de esa parte de la división de bienes de la sociedad ...."

Pasemos entonces a aplicar las normas de derecho antes mencionadas a la controversia planteada en el caso de epígrafe.

## IV

El Seguro Social es uno de los programas federales de justicia social de mayor trascendencia y profundo impacto que se legislara durante el Nuevo Trato. Este es un sistema integrado de impuestos y transferencias que provee, entre otros beneficios, un ingreso mensual a trabajadores retirados, así como a algunos de sus dependientes. En sus comienzos, este programa era parte de una propuesta nacional de recuperación económica cuyo objetivo primordial era proveer las garantías necesarias para evitar un estado

de desamparo y dependencia en la vejez. *Economic Security Act: Hearings on H.R. 4120 Before the House Comm. on Ways and Means*, 74th Cong. 20 (1935), citado en G. Liu, *Social Security and the Treatment of Marriage: Spousal Benefits, Earnings Sharing and the Challenge of Reform*, 1999 (Núm. 1) Wis. L. Rev. 1, 5 n.7.

En *Helvering v. Davis*, 301 U.S. 619, 641 (1937), el Juez Asociado Cardozo describió con marcada elocuencia el propósito de esta legislación al señalar:

> The hope behind this statute is to save men and women from the rigors of the poor house as well as from the haunting fear that such a lot awaits them when journey's end is near.

En su esencia, como dijimos, el Seguro Social es un sistema de seguro o ahorro público basado en impuestos que el Congreso de Estados Unidos puede alterar a su discreción. Véanse: 42 U.S.C.A. sec. 1304; *Califano v. Boles*, 443 U.S. 282, 296 (1979) ("[T]he social security system in this country remain[s] a contributory insurance plan and [has] not become a general welfare program"). Véase, además, *Flemming v. Nestor*, 363 U.S. 603, 611 (1960). Este sistema goza de ciertos atributos que lo asemejan a un plan de pensión o retiro, toda vez que, al igual que éstos, el Seguro Social tiene como finalidad proveer a sus beneficiarios de un ingreso mínimo en la vejez.[11]

El sistema de Seguro Social, sin embargo, tiene varias particularidades que lo diferencian de un plan de pensión o retiro, como el que interpretamos en *Rosa Resto*. Primeramente, como ya indicamos, éste es un impuesto sobre nómina que se impone en virtud de legislación federal.

---

[11] Se estima que los beneficios provenientes del Seguro Social representan, para el sesenta y dos por ciento de la población envejeciente, el cincuenta por ciento o más de sus ingresos; para el veintiséis por ciento representa más de un noventa por ciento de los ingresos, y para un 15% quince por ciento de la población con derecho a recibir beneficios, el Seguro Social representa su única fuente de ingresos. G. Liu, *Social Security and the Treatment of Marriage: Spousal Benefits, Earnings Sharing and the Challenge of Reform*, 1999 (Núm. 1) Wis. L. Rev. 1, 3.

Véase 26 U.S.C.A. sec. 3101, Sec. 3101 del Código de Rentas Internas federal. Por lo tanto, la aportación que se hace al Seguro Social es de carácter mandatorio y no una cuota que voluntariamente se paga. No hay tampoco mecanismo alguno que permita retirar las aportaciones hechas a través de los años al fondo que nutre el Seguro Social. De lo anterior se desprende que esas aportaciones no constituyen un activo de la sociedad legal de gananciales, sino todo lo contrario, un pasivo.

Además, los beneficios que se recibirán de esas aportaciones no serán sólo para el trabajador retirado —de cuyos salarios se retuvieron las aportaciones— sino también para algunos de sus dependientes, incluyendo su cónyuge, ex cónyuge o cónyuge supérstite, y los hijos dependientes. Estos beneficios se conocen como "beneficios derivados", pues se derivan de la dependencia que genera la relación familiar que existe entre estos beneficiarios y el contribuyente o beneficiario principal. A través de las distintas disposiciones del *Social Security Act* se trasluce que el Congreso ha utilizado, como criterio de dependencia para conceder los beneficios derivados, la edad y el estatus matrimonial del beneficiario dependiente. *Califano v. Jobst*, 434 U.S. 47, 52 (1977) ("[Congress] has elected to use simple criteria, such as age and marital status, to determine probable dependency"). Ello supone, entonces, que como ocurre en este caso, de las aportaciones hechas por un cónyuge al Seguro Social el otro cónyuge ha adquirido también el derecho a recibir los beneficios del Seguro Social. Habida cuenta de lo anterior, forzoso es concluir que lo resuelto en *Rosa Resto* no aplica a la situación que hoy se encuentra ante nuestra consideración.

El ex cónyuge de un trabajador retirado tiene derecho a recibir beneficios bajo este programa siempre y cuando cumpla con los requisitos del estatuto. Ello es así desde 1965, cuando el Congreso enmendó el *Social Security Act* para hacer extensiva a una mujer divorciada los

mismos beneficios que disfrutaban hasta ese entonces sólo las esposas o viudas de un beneficiario. A partir de ese momento, toda mujer divorciada que hubiera estado casada por espacio de veinte años,[12] y que dependiera económicamente de su ex cónyuge,[13] cualificaba para recibir beneficios por retiro como resultado de las aportaciones hechas por su ex marido al Seguro Social. Pub. L. 89–97, Sec. 308(a), 79 Stat. 375–376.

El Informe del Senado Núm. 404 del Proyecto de Resolución de la Cámara de Representantes 6675 (H.R. 6675), explica el propósito de estas enmiendas de la manera siguiente:

> It is not uncommon for a marriage to end in divorce after many years, when the wife is too old to build up a substantial social security earnings record even if she can find a job.
>
> . . . . . . . . .
>
> The bill would ... provide that a wife's benefit will not terminate when she and her husband are divorced if they had been married for at least 20 years before the divorce.
>
> . . . . . . . . .
>
> *These changes would provide protection mainly for women who have spent their lives in marriages that are dissolved when they are far along in years —especially housewives who have not been able to work and earn social security benefit protection of their own— from loss of benefit rights.* (Énfasis suplido.) 1965 U.S.C.C.A.N. Vol. 1, págs. 2047–2048.

Así lo ha interpretado el Tribunal Supremo federal. En *Califano v. Jobst*, supra, pág. 52, se indicó:

> The statute is designed to provide the wage earner and the dependent members of his family with protection against the hardship occasioned by his loss of earnings; it is not simply a welfare program generally benefiting needy persons. Véase, además, *Mathews v. De Castro*, 429 U.S. 181, 185–186 (1976).

---

[12] En 1973 el Congreso enmendó nuevamente el *Social Security Act* para reducir a diez años el tiempo en que los cónyuges debían permanecer casados para que la esposa divorciada cualificara para los beneficios del Seguro Social. Pub. L. 95–216, Secs. 336(a)(3), (B)(3), (C)(1), 91 Stat. 1547.

[13] En 1972 el Congreso eliminó el requisito de dependencia antes mencionado. Pub. L. 92–603, Secs. 114(a)(b), 86 Stat. 1348.

 Como señalamos, la ex esposa de un beneficiario del Seguro Social cualifica para recibir los beneficios si cumple con varias exigencias del estatuto federal. Como requisito de umbral, una ex cónyuge tiene que haber estado casada con el beneficiario por un período de diez años o más. Además, tiene que haber estado divorciada por lo menos dos años antes de solicitar los beneficios; no puede haber contraído nuevas nupcias;(14) el ex cónyuge no puede tener derecho a recibir los beneficios del Seguro Social por derecho propio, o de tener derecho, pero la cantidad a recibir es menos de la mitad del Seguro Social del ex cónyuge, debe haber cumplido sesenta y dos años. Véase 42 U.S.C.A. sec. 402(b)(1)–(4).

 Como vemos, el complejo sistema de Seguro Social provee para que de los impuestos que nutren ese fondo reciban en su día una pensión no sólo el trabajador retirado de cuyo sueldo se hicieron las aportaciones, sino también su ex cónyuge. Ello así, toda vez que el Congreso fue consciente de la dificultad que enfrentan aquellas mujeres que luego de muchos años de matrimonio, generalmente los de mayor productividad, durante los cuales se dedicaron al cuido de sus hijos en el hogar sin cotizar para el Seguro Social, ahora al divorciarse y en el atardecer de la vida ven su estabilidad económica amenazada como resultado de ese divorcio. Por lo tanto, de ese sueldo que se reputa ganancial —Art. 1301(2) del Código Civil, *supra*, y del cual se retienen las contribuciones que nutren el fondo del Seguro Social— el Congreso dispuso que ambos miembros de la sociedad legal de gananciales reciban, en su día, los beneficios del Seguro Social.

Habida cuenta de lo anterior resolvemos que, a la luz de los hechos particulares de este caso, no procede colacionar

(14) Si el cónyuge divorciado está recibiendo los beneficios del Seguro Social y contrae nuevas nupcias, pierde el derecho a recibir tales beneficios. Si el segundo matrimonio termina, bien por divorcio, muerte o anulación, se recupera el derecho a recibir los beneficios del primer cónyuge. Si el segundo matrimonio duró diez años o más, se pueden recibir los beneficios como ex cónyuge de ese segundo esposo.

las aportaciones que el peticionario ha hecho al Seguro Social.

En mérito de lo anterior, revocamos la sentencia dictada por el Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que continúen los procedimientos acorde con lo dispuesto en la opinión que antecede.

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Rebollo López con concurrió sin opinión escrita. El Juez Asociado Señor Fuster Berlingeri emitió una opinión concurrente y disidente, a la cual se unió la Jueza Asociada Señora Fiol Matta.

— O —

Opinión concurrente y disidente emitida por el Juez Asociado Señor Fuster Berlingeri, a la cual se une la Jueza Asociada Señora Fiol Matta.

Como se indica en la propia opinión de la mayoría del Tribunal, ha sido doctrina firme de este Foro que las pensiones y los planes de retiro son *bienes privativos* por su naturaleza personalísima. Por ello, concurro con la parte del dictamen de la mayoría aquí de que los *beneficios* del Seguro Social federal son privativos y no pueden incluirse en el inventario del caudal ganancial sujeto a liquidación.

Del mismo modo, hemos resuelto reiteradamente que las *aportaciones* a los sistemas de pensiones y planes de retiro *que se pagan a costa del caudal común* son de naturaleza ganancial, por lo que la sociedad de gananciales *tiene derecho a un crédito* por el importe total de esas aportaciones al momento de su disolución. Esta importante norma tiene dos fundamentos principales. Por un lado, surge de lo dispuesto expresamente por el Código Civil de Puerto Rico, en sus Arts. 1301, 1308 y 1317 (31 L.P.R.A. secs. 3641, 3661 y 3692), según lo hemos interpretado, con

respecto a lo que aquí nos concierne. *Rosa Resto v. Rodríguez Solís*, 111 D.P.R. 89 (1981). Por otro lado, se apoya, además, en una consideración de *equidad*, puesto que habiéndose adquirido el privatísimo derecho a una pensión con fondos gananciales, es justo que al cónyuge que no es el titular de esa pensión se le reconozca, al menos, un crédito por la parte correspondiente del caudal común invertido en la adquisición de la pensión referida.

Sin embargo, la mayoría del Tribunal hoy se aparta de nuestra posición histórica respecto al *crédito por tales aportaciones* cuando son para el Seguro Social federal. El decreto mayoritario se emite a pesar de que se reconoce *que no hay nada en la legislación federal que requiera tal resultado*. No comparto esta parte del dictamen de la mayoría.

El decreto mayoritario en cuestión constituye una revocación *sub silentio* de lo que muy deliberadamente resolvimos en *Rosa Resto v. Rodríguez Solís*, supra. En ese caso, estaban en cuestión las aportaciones de un juez pagadas mediante deducciones salariales compulsorias al Sistema de Retiro de la Judicatura. Resolvimos que aunque la pensión del juez era privativa, las aportaciones mediante las cuales se adquirió la pensión eran *gananciales*, y le reconocimos el *crédito* correspondiente a su esposa. Expresamente determinamos que esas aportaciones se *tenían que incluir en inventario y colacionarlas en la liquidación de bienes gananciales. Rosa Resto v. Rodríguez Solís*, supra, pág. 93. El carácter de esas aportaciones era esencialmente igual en lo que aquí nos concierne a las deducciones salariales del Seguro Social federal del caso de autos, *por lo que deben tratarse de igual modo*.

El único fundamento formulado por la mayoría para apartarse de nuestra reiterada doctrina sobre el *crédito por las referidas aportaciones* es que la ex cónyuge en el caso de autos, de sobrevivir por tiempo suficiente y una vez solicite los correspondientes beneficios, podría resultar fa-

vorecida también de tales aportaciones al Seguro Social federal *si cumple con toda una serie de requisitos* tales como no haber contraído nuevas nupcias, haber cumplido al menos sesenta y dos años de edad, y no estar cualificada para recibir beneficios del Seguro Social por derecho propio. Es decir, la mayoría del Tribunal sólo ofrece una endeble justificación para apartarse de nuestra fundamental doctrina jurídica, una que depende de varias eventualidades aleatorias. Más aún, para nada toma en cuenta la mayoría el hecho de que la ex cónyuge en el caso de autos contribuyó durante *treinta y nueve años* para hacer posible la pensión que ahora su ex marido disfrutará por su sola cuenta. No se le da peso al hecho crucial de que esa pensión se pagó con *bienes comunes*. Tampoco se pondera cómo compararía el monto del crédito en cuestión con el supuesto beneficio que podría recibir la ex cónyuge del Seguro Social por las aportaciones referidas; no se explica por qué la ex esposa no puede obtener ese crédito junto con el potencial beneficio del Seguro Social, en vista de la naturaleza de este programa que persigue fines de bienestar social que rebasan por mucho el entramado de las aportaciones.

En mi criterio, el claro derecho a un *crédito* por la aportación ganancial no se debe conculcar a base de la frágil consideración de que podría ser que la ex cónyuge se beneficie de esa aportación. Además, habida cuenta de la situación prevaleciente todavía en la mayoría de los matrimonios del país, la denegatoria del crédito que aquí nos concierne no sólo menoscaba el entramado de nuestro Derecho Civil y la equidad, sino que atenta también contra la fuerte política constitucional que existe en Puerto Rico " 'de lograr la igualdad entre los esposos y proteger a la mujer, por tantos siglos marginada ...' ". *Carrero Quiles v. Santiago Feliciano*, 133 D.P.R. 727, 735 (1993).

Por todo lo anterior, se debe reconocer a la ex esposa del caso de autos el crédito que le corresponde. Como la mayo-

ría resuelve de otro modo, yo disiento con respecto a esta parte del dictamen.