Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Olga Torres Rodríguez <br><br> Peticionaria <br><br> v. <br><br> Jesús Carrasquillo Nieves <br><br> Recurrido | Certiorari <br><br> 2009 TSPR 187 <br><br> 177 DPR ____ |

Número del Caso: CC-2008-950

Fecha: 29 de diciembre de 2009

Tribunal de Apelaciones:

      Región Judicial de Aibonito, Panel VII

Jueza Ponente:
           Hon. Yvonne Feliciano Acevedo

Abogada de la Parte Peticionaria:

           Lcda. Hilda Esther Colón Rivera

Abogado de la Parte Recurrida:

           Lcdo. Luis Ramón Rodríguez Cintrón

Materia: Alimentos

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correccione s del proceso de compilación y publicación oficial de las decisio nes del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

OLGA TORRES RODRÍGUEZ

    Peticionaria

       v.

                                   CC-2008-0950     *Certiorari*

JESÚS CARRASQUILLO NIEVES

    Recurrido

Opinión del Tribunal emitida por la Jueza Asociada Señora Pabón Charneco

San Juan, Puerto Rico a 29 de diciembre de 2009.

    La peticionaria Olga Torres Rodríguez nos solicita la revisión de una Sentencia del Tribunal de Apelaciones, mediante la cual éste confirmó el dictamen del Tribunal de Primera Instancia que, *inter alia*, ajustó la pensión alimentaria a ser satisfecha por el recurrido Jesús Carrasquillo Nieves para el hijo nacido de una relación consensual habida entre las partes. El caso de autos nos presenta varios asuntos a resolver. En primera instancia, debemos resolver si la partida de honorarios de abogado puede ser incorporada con la deuda de alimentos y su pago administrado por la Administración para el Sustento de Menores mediante un plan de pagos. En segundo lugar, debemos determinar si los beneficios de seguro social

que recibe la madre custodio para sus hijos, incluyendo uno que no es el alimentista en el caso de Epígrafe, pueden ser considerados como ingresos de dicha madre custodio para fines de calcular la pensión alimentaria de uno de esos hijos. Por último, debemos determinar si el Reglamento 7135- Nuevas Guías para Determinar y Modificar Pensiones Alimentarias en Puerto Rico de mayo de 2006 puede aplicarse de forma retroactiva.

Previo a iniciar nuestro análisis, expondremos los hechos que dieron génesis a la controversia de autos, no sin antes consignar que el tracto del caso ante nos ha sido uno arduo y azaroso.

## I.

El 25 de noviembre de 1997 Olga Torres Rodríguez, en adelante, la peticionaria, instó Demanda de alimentos y relaciones paterno-filiales contra Jesús Carrasquillo Nieves, en adelante, el recurrido, para beneficio de un hijo menor nacido de la relación consensual habida entre ellos.

Trabada la controversia entre las partes, el 5 de febrero de 1998 se le fijó al recurrido satisfacer una pensión alimentaria provisional de $471.79 mensuales, efectiva al 1 de febrero de 1998. A su vez, surge de autos que durante el procedimiento del caso de alimentos la peticionaria solicitó la custodia del menor.

El 27 de junio de 2000 --y luego de once suspensiones de la vista de alimentos-- el recurrido presentó una solicitud de modificación de la pensión alimentaria provisional impuesta. No obstante, evaluada la reclamación

del recurrido y efectuados los cómputos correspondientes, el tribunal fijó la obligación alimentaria a ser satisfecha en $481.89 mensual. En consecuencia, denegó el petitorio de modificación de la pensión instado por el recurrido.

El 28 de noviembre de 2000, el Tribunal de Primera Instancia emitió un dictamen en el que le concedió a la peticionaria la custodia del menor alimentista y determinó que las relaciones paterno-filiales continuarían de acuerdo con lo establecido por el tribunal. De esta determinación, el recurrido solicitó revisión ante el Tribunal de Apelaciones. Dicho foro emitió Sentencia el 29 de enero 2002, modificando el dictamen y ampliando las relaciones paterno-filiales establecidas.

Luego de varias suspensiones de la vista de alimentos, el 10 de noviembre de 2003, el recurrido le planteó al Tribunal de Primera Instancia que las relaciones paterno filiales establecidas constituían realmente una custodia compartida del menor que ameritaba la eliminación de la pensión alimentaria provisional. Ante una oportuna oposición de la peticionaria, el caso quedó ante la consideración del tribunal de instancia para determinar si procedía la concesión de una custodia compartida, la eliminación de la pensión alimentaria provisional o una orden para fijar la pensión alimentaria permanente.

El 28 de julio de 2004 el tribunal de instancia determinó que no procedía relevar al recurrido del pago de la pensión alimentaria, siendo este dictamen confirmado por el Tribunal de Apelaciones y denegada la solicitud de

*certiorari* por este Foro. En consecuencia, el Tribunal de Primera Instancia señaló una vista de alimentos para el 15 de junio de 2005.

Así las cosas, el 21 de septiembre de 2005 la peticionaria solicitó un aumento de la pensión alimentaria provisional, mientras que el 31 de enero de 2006 el recurrido peticionó la custodia compartida del menor. Sobre el primer extremo, el 28 de noviembre de 2006, el magistrado de instancia refirió el asunto a la consideración de la Examinadora de Pensiones Alimentarias para que ésta evaluara si el recurrido cumplía con los requisitos del Artículo 7B de las Nuevas Guías para Determinar y Modificar Pensiones Alimentarias toda vez que las relaciones paterno-filiales excedían el 20% del tiempo compartido con el menor. Dicho dictamen fue revocado por el Tribunal de Apelaciones quien ordenó la celebración de una vista para dilucidar la moción de custodia compartida presentada por el recurrido, ordenando, a su vez, la celebración de la vista de alimentos con instrucciones a la Examinadora de Pensiones Alimentarias.

Debido al tiempo transcurrido entre la solicitud de la pensión alimentaria y la celebración de la vista en los méritos, las partes aceptaron, a solicitud de la Examinadora de Pensiones Alimentarias, que el caso fuera trabajado de manera tal que se computara la pensión alimentaria original para el primer término desde que ésta fue solicitada en el 1997, y los otros años serían trabajados como una revisión por el transcurso de los 3 años que establece la ley.

Sobre el particular, el recurrido argumentó que el ajuste a la pensión alimentaria básica que venía obligado a satisfacer para beneficio del menor, debía retrotraerse al año 2003, fecha en que el tribunal amplió las relaciones paterno-filiales. La peticionaria se opuso a dicha pretensión. Así pues, la Examinadora de Pensiones Alimentarias recomendó al foro de instancia acceder al petitorio del recurrido y hacer el ajuste en la pensión alimentaria desde el año 2003, en consideración a la cantidad de tiempo semanal que el menor compartía con éste. Finalmente, recomendó modificar la pensión alimentaria a $548.72 mensual a partir de junio de 2008 y que se concedieran los honorarios de abogado solicitados por la peticionaria.

El 30 de junio de 2008, el Tribunal de Primera Instancia aprobó el Informe de la Examinadora de Pensiones Alimentarias y, en consecuencia, hizo las siguientes determinaciones: (1) fijó la pensión alimentaria en la cantidad de $548.72 mensuales efectiva a junio de 2008, a través de la Administración para el Sustento de Menores; (2) resolvió que el recurrido continuaría proveyendo un plan médico al menor; (3) concedió la cantidad de $2,000 por concepto de honorarios de abogado a favor de la peticionaria; (4) determinó que el balance retroactivo ascendía a la cantidad de $2,062.62; y (5) ordenó a la Administración para el Sustento de Menores a que procediera a incorporar las partidas de honorarios de abogado y de

retroactividad con un plan de pago de $101.28 mensuales, efectivo al 1 de agosto de 2008.

Como fundamento a su decisión, dicho foro indicó que:

"[n]o hay por qué esperar a que se adopte una reglamentación para que el tribunal se mueva a hacer lo que entiende es justo. La prueba estableció que desde el 1998 el demandado tenía relaciones paterno filiales concedidas, las cuales fueron extendidas en el 2002. Ese hecho no puede pasar desapercibido, la consecuencia legal tampoco. Procede ajustar la pensión alimentaria efectiva al año 2003. No se trata con esta decisión de privar a la demandante de la pensión alimentaria que le corresponde al menor, sino de ser justos con un padre responsable. El demandado continuará aportando plan médico para el menor."

Insatisfecha, la peticionaria acudió al Tribunal de Apelaciones. Mediante Sentencia de 26 de septiembre de 2008 dicho foro confirmó el dictamen del Tribunal de Primera Instancia.

Inconforme, la peticionaria recurre ante nos planteando como errores:

**Erró el TA al expresar que no iba a intervenir con el plan de pago concedido relativo a los honorarios de abogado que fuera concedido, debido a que el recurso incoado brilla por su ausencia de elementos para intervenir con dicha determinación.**

**Erró el TA al expresar que no iba a intervenir con la determinación del TPI al considerar como ingresos los beneficios del seguro social que recibe el menor alimentista, cuando claramente el asunto planteado era con relación a los beneficios de un menor hermano del alimentista.**

**Erró el TA al expresar que el Reglamento 7135- Guías para establecer, modificar y modificar (sic) pensiones alimentarias en PR de mayo de 2006 puede aplicarse de forma retroactiva.**

Examinado el recurso, concedimos al recurrido un término para mostrar causa por la cual no debíamos expedir

el recurso. Contando con el beneficio de la comparecencia del recurrido, procedemos a resolver, conforme lo intimado.

## II.

En nuestro ordenamiento, los casos relacionados con los alimentos de menores están revestidos de un alto interés público. *Arguello v. Arguello*, 155 D.P.R. 62 (2001). En estos casos el interés no puede ser otro que el bienestar del menor. *Toro Sotomayor v. Colón Cruz*, res. el 21 de agosto de 2009, ___ D.P.R.___ (2009), 2009 T.S.P.R. 134, 2009 J.T.S. ___. Más aún, este Tribunal ha reconocido que el derecho a reclamar alimentos constituye parte del derecho a la vida protegido por la Constitución de Puerto Rico. *Véase* Const. PR. Art. II, Sección 7; *Figueroa Robledo v. Rivera Rosa*, 149 D.P.R. 565 (1999); *Rodríguez Avilés v. Rodríguez Beruff*, 117 D.P.R. 616, 621 (1986).

Hemos señalado que esta obligación surge de la relación paterno-filial que se origina en el momento en que la paternidad o maternidad quedan establecidas legalmente. *Martínez Vázquez v. Rodríguez Laureano*, 160 D.P.R. 145 (2003). Es un deber que "existe por un derecho natural a percibir alimentos que simplemente ha sido formalizado por el legislador convirtiéndola en derecho positivo y vigente y, por otro lado, creando en el ánimo del obligado el deber de proporcionarlos independientemente de su voluntad de cumplir". Pedro F. Silva-Ruiz, *Alimentos para menores de edad en Puerto Rico: las guías mandatorias basadas en criterios numéricos, para la determinación y modificación de pensiones alimenticias*, 52 Rev. Col. Abog., abril-junio

1991, pág. 112. A tales efectos, hemos afirmado que la obligación de alimentar no sólo es un deber moral, sino, que, además, se trata de un deber jurídico que, en nuestra jurisdicción, ha sido consagrado en varios de los artículos de nuestro Código Civil. *Martínez Vázquez v. Rodríguez Laureano*, *supra*.

Tratándose de un derecho de tan alto interés público, el Estado, como parte de su política pública, ha legislado ampliamente para velar por su cumplimiento. *Íd.* La Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, conocida como "Ley Orgánica de la Administración para el Sustento de Menores",[1] reformuló la política pública del Estado al crear un procedimiento judicial expedito que brinda protección al mejor interés y bienestar del menor mediante trámites rápidos y eficientes de fijación, modificación y cobro de pensiones alimentarias. Ruth Ortega-Vélez, *Compendio de Derecho de Familia*, San Juan, Ed. Publicaciones JTS, 2000, T. II, Pág. 567. A pesar de que a través de los años el estatuto ha sufrido varias enmiendas, en todo momento se ha conservado la política pública de proveer para que "los padres o las personas legalmente obligadas asuman la responsabilidad que tienen para con sus hijos". *Martínez Vázquez v. Rodríguez Laureano*, *supra*.

### III.

*A priori*, la peticionaria arguye que el Tribunal de Apelaciones incidió al no intervenir con la determinación del Tribunal de Primera Instancia de concederle al recurrido

---

[1] 8 L.P.R.A. sec. 501 *et seq.*

un plan de pago para satisfacer los honorarios de abogado que se le impusieran. Sostiene que la partida por concepto de honorarios de abogado no puede ser pagada a través de ASUME mediante un plan de pago sino que debe pagarse directamente a su representante legal conforme resuelto en *In Re Sixto Pabón García*, 118 D.P.R. 723 (1987). Por el contrario, el recurrido señala esencialmente que en ninguna parte de la ley se impide que la partida por concepto de honorarios de abogado se pague a través de la ASUME mediante un plan de pago.

Es norma reiterada por la jurisprudencia y adoptada estatutariamente que la obligación alimentaria incluye el pago de una partida para cubrir los honorarios de abogado. A tales efectos, hemos resuelto que procede la imposición de los honorarios de abogado a favor de los menores en una acción para reclamar alimentos, sin la necesidad de que actúe con temeridad el demandado al defenderse de la reclamación. *Chévere v. Levis*, 152 D.P.R. 492(2000); Véase también, *Guadalupe Viera v. Morell*, 115 D.P.R. 4, 14 (1983), y casos allí citados.

De hecho, la propia Ley Núm. 5, *supra*, provee en su Artículo 22 para la imposición de honorarios de abogado a favor del alimentista en procedimientos para la fijación, modificación o para hacer efectiva una orden de pensión alimentaria, cuando éste prevalezca. 8 L.P.R.A. sec.

521(1).[2] Incluso, hemos apuntado que aunque el alimentista esté representado por una organización de asistencia legal a indigentes, tiene derecho a reclamar una partida por honorarios de abogado. *Semidey v. Tribunal*, 99 D.P.R. 705, 707 (1970).

Es más, desde antes de la aprobación de la Ley Núm. 5, *supra*, este Tribunal había reconocido que el concepto de alimentos que describe el Artículo 142 del Código Civil, 31 L.P.R.A. sec. 561, cubría los honorarios de abogado o la *litis expensa* de la causa de acción incoada para reclamarlos, sin que fuese necesario que el demandado actuara con temeridad al defenderse en el caso. *Conesa Braun v. Corte de Distrito de Ponce*, 72 D.P.R. 68, 72 (1951); *Valdés v. Tribunal de Distrito*, 67 D.P.R. 310, 312-313 (1947).

La norma que impone al alimentante el pago de honorarios está más que justificada, porque la negación de esos fondos en un pleito de alimentos privaría al alimentista, o a su representante o guardián, de los recursos económicos necesarios para reclamar y hacer efectivo su derecho. Incluso, podría comprometer la pensión alimentaria para atender el reclamo de pago del representante legal. *Rodríguez Avilés v. Rodríguez Beruff*,

---

[2]  El Artículo 22 de la Ley Núm. 5, *supra*, establece en su primer inciso lo siguiente:
   1) En cualquier procedimiento bajo este capítulo para la fijación, modificación o para hacer efectiva una orden de pensión alimentaria, el tribunal, o el Juez Administrativo deberá imponer al alimentante el pago de honorarios de abogado a favor del alimentista cuando éste prevalezca.

117 D.P.R. 616, 621 (1986); *Milán Rodríguez v. Muñoz*, 110 D.P.R. 610, 612- 614 (1981).

Un análisis de la jurisprudencia a tales efectos refleja que el criterio indispensable para conceder los honorarios de abogados no es que efectivamente el alimentista los haya desembolsado previamente a un abogado. El criterio rector es compensar las dificultades que sufre el alimentista al tener que reclamar judicial o administrativamente los alimentos a quien tiene la obligación moral y legal de suministrarlos. Véanse, *Chévere v. Levis*, *supra*; *Guadalupe Viera v. Morell*, *supra*.

Ahora bien, aún cuando no existe disposición de ley que prohíba taxativamente que los honorarios de abogado se incluyan como parte de un plan de pago, el propio Artículo 22 de la Ley Núm. 5, *supra*, establece lo que podría considerarse la política de la Administración para el Sustento de Menores en cuanto a la imposición y pago de honorarios de abogado. El inciso tres (3) de dicho artículo reza, en lo pertinente:

> (3) En el caso en que las partes estén casadas entre sí y uno de los cónyuges controle la totalidad o la mayor parte de los bienes líquidos de la sociedad de gananciales, el tribunal, o Juez Administrativo ordenará al que controla los bienes conyugales el **pago inmediato** de honorarios de abogados razonables al otro cónyuge, según solicitados. (Énfasis nuestro.)

8 L.P.R.A. sec. 521.

Si cuando se trata de cónyuges la ley es clara al establecer que el pago de honorarios de abogados será inmediato, *a fortiori*, en casos relacionados a los alimentos de menores, que están revestidos de alto interés público,

también el pago debe ser inmediato. Un razonamiento similar fue el que hace más de cincuenta años nos condujo a resolver que los honorarios de abogado de una acción para obligar al alimentante a pasarle alimentos a su hijo son parte de los alimentos de ese hijo. Véase, *Valdés v. Tribunal de Distrito*, *supra*.[3]

Por otro lado, la parte peticionaria aduce que la partida por concepto de honorario debe pagarse a su representante legal directamente conforme resolvió el caso de *In Re Sixto Pabón*, *supra*. No obstante, dicho precedente versa sobre si el representante legal de la madre del alimentista incurrió en conducta altamente lesiva a los mejores intereses de su cliente al convenir en que sus honorarios fueran pagados por la otra parte. A esos efectos, lo único que dicho caso menciona sobre honorarios de abogado es que en casos de alimentos donde la madre del alimentista no tenga recursos económicos, el alimentante debe pagar los honorarios al representante legal de ésta. Por tanto, dicho precedente no establece una norma general en cuanto a que la partida de honorarios en casos de alimentos se deba satisfacer directamente al representante legal del alimentista.

Por el contrario, nuestro ordenamiento establece que los honorarios de abogado no pertenecen al abogado, sino al

---

[3] En *Valdés v. Tribunal de Distrito*, *supra*, pág. 313, este Foro sostuvo que: "Si los honorarios de abogado de una persona que solicita alimentos provisionales dentro de un pleito de divorcio son parte de sus alimentos, *a fortiori* los honorarios para obligar al padre a pasarle alimentos permanentes a su hijo en un pleito independiente son parte de tales alimentos".

litigante,[4] quien dará a la cuantía concedida por ese concepto el destino que desee. De ahí, que la parte peticionaria tiene derecho a reclamar y a recibir una partida razonable por honorarios, sobre todo, si efectivamente quiere destinarlos a satisfacer las facturas que por tal concepto le presentó su representante legal en ese tiempo. Es decir, una parte que haya tenido que incurrir en gastos para reclamar lo que, a fin de cuentas es un derecho, tiene el mismo derecho a recuperar lo que gastó.

En concordancia con la normativa enmarcada, resolvemos que no procede que la partida de honorarios de abogado se incorpore con la deuda de alimentos y que su correspondiente pago se haga a través de la Administración para el Sustento de Menores mediante un plan de pagos. Por lo tanto, no procede la inclusión de los honorarios de abogado en el plan de pagos que se le fije a una parte para el pago de una pensión alimentaria. Los honorarios de abogado deben satisfacerse inmediatamente. De lo contrario se privaría al alimentista, o a su representante o guardián, de los recursos económicos necesarios para reclamar y hacer efectivo su derecho. Como ya mencionamos, de no hacerse el pago inmediatamente al alimentista que prevalezca en el pleito, se podría comprometer la pensión alimentaria para atender el reclamo de pago del representante legal. Por

---

[4] El Canon 24 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, dispone que '[l]os honorarios concedidos por un tribunal son para beneficio del cliente y no debe el abogado reclamarlos para sí o renunciarlos sin autorización expresa del cliente'.

ende, esa es la única forma en que el carácter reparador que persigue su concesión se logra.

**IV.**

De otra parte, y con relación al segundo error planteado, la peticionaria fue incapacitada por la Administración del Seguro Social desde febrero de 2007, recibiendo mensualmente $1,352.74 como beneficio por su incapacidad. Recibe, a su vez, $676.00 mensuales como beneficio del seguro social para sus dos hijos. Cabe señalar que uno de sus hijos menores de edad no es hijo del recurrido. No obstante, el recurrido reclamó se computara dicha partida --los beneficios que reciben ambos hijos de la peticionaria-- como ingreso de la madre para calcular la pensión que éste tiene que satisfacer **para su hijo**.

*A contrario sensu*, la peticionaria alega que éste no debe considerarse como ingreso por el carácter personalísimo que distingue a ese tipo de beneficio. Es decir, nos corresponde resolver si los beneficios de seguro social que recibe la madre custodio para sus hijos, incluyendo uno que no es el alimentista en el caso de autos, pueden ser considerados como ingresos de dicha madre custodio para fines de calcular la pensión alimentaria de uno de esos hijos. Respondemos en la negativa.

La Sección 202 (d)(1) del Social Security Act,[5] 42 U.S.C. sec. 402, establece que los hijos menores dependientes de las personas incapacitadas bajo dicho

_____

[5] Ley Púb. Núm. 92-603 del 14 de agosto de 1935 conocida como "Social Security Act", Títulos IV-A y XVI, según enmendada.

estatuto, tienen derecho a recibir un beneficio económico.[6] De esa manera, los hijos menores que reciben un beneficio económico bajo la referida ley, son considerados como beneficiarios de los fondos que reciben sus padres bajo el Social Security Act, *supra*.[7] Bajo el palio de la Sección 202 del Social Security Act, *supra*: "the children of parents who have become disabled, or have retired or died, can be eligible for dependent social security benefits, and receipt of such benefits by children, or their representative payees, has frequently given rise to claims of credit by parents, or their estates, who have been ordered to support these children". Michael A. DiSabatino, J. D., *Right to credit on child support payments for social security or other government dependency payments made for benefit of child*, 34 A.L.R.5th 447, 463 (1995). Como apunta el mencionado autor, el beneficio de seguro social que reciben los hijos menores a raíz de una incapacidad de algún padre, ha generado que los padres obligados a pagar pensiones alimentarias a sus hijos reclamen un crédito a base del

---

[6] La Sección 202(d)(1) del Social Security Act, *supra*, reza en lo pertinente: Child´s insurance benefits: "Every child (as defined in section 416(e) of this title) of an individual entitled to old-age or disability insurance benefits, or of an individual who dies a fully or currently insured individual, if such child... (c) was dependent upon such individual".

[7] En el caso de *Andler v. Andler*, 538 P.2d 649, 651 (1975), el Tribunal Supremo de Kansas, al expresarse sobre los pagos que reciben los hijos como beneficiarios de padres que han sido declarados incapacitados por el Seguro Social, sostuvo que:

> "The Social Security Administration provides benefits for minor children whose parent(s) is (are) disabled. The minor children are considered beneficiaries of the benefits earned and paid for by their parents under the Social Security Act. The money given under this program is an unqualified grant of money to be used as the minor's guardian determines. (42 U. S. C. A. 402 [d][1].)

susodicho beneficio. Como corolario de lo anterior, en la gran mayoría de las jurisdicciones estadounidenses se han litigado y resuelto casos concernientes al referido asunto. Véanse, en general, Tori R.A. Kricken, *Child Support and Social Security Dependent Benefits: A Comprenhensive Analysis and Proposal for Wyoming*, 2 Wyo. L. Rev. 39 (2002); Michael A. DiSabatino, *supra*; Bruce I. McDaniel, *Rith to Credit on Child Support Payments for Social Security or Other Government Dependency Payments made for Benefit of Child*, 77 A.L.R.3th, 1315 (1977). Véase, además, Richard R. Carlson y James W. Paulsen, *Family Law: Parent and Child*, 50 SMU L. Rev. 1237, 1259-1269 (1997). Así, la gran mayoría de las jurisdicciones estatales en los Estados Unidos, así como Puerto Rico, han concedido créditos al padre/madre no custodio por los beneficios que recibe su hijo menor de edad para efectos del cálculo de la obligación de pensión alimentaria cuando el menor recibe el beneficio del seguro social como consecuencia de la incapacidad de ese mismo padre/madre no custodio.[8]

El fundamento prevaleciente que han esgrimido y secundado los distintos tribunales estatales para acreditar el beneficio del seguro social  --que reciben los hijos

---

[8] Véanse, *Martínez v. Rivera*, 116 D.P.R. 164 (1985); *Scarborough v. Scarborough*, 282 Ga. 427 (Georgia 2007); *Mask v. Mask*, 620 P.2d 883 (N.M. 1980)); *Bowden v. Bowden*, 426 So. 2d 448 (Ala. Civ. App. 1983); *Childerson v. Hess*, 555 N.E.2d 1070 (Ill. Ap. 5to Dist. 1990); *Newman v. Newman*, 451 N.W.2d 843 (Iowa 1990); *Andler v. Andler*, *supra*; *Casper v. Casper*, 593 N.W.2d 709 (Minn. Ap. 1999); *In re Marriage of Cowan*, 928 P.2d 214 (Mont. 1996); Keith v. Purvis, 982 So.2d 1033 (Miss. Ap. 2008); *Thompson v. Thompson*, 868 N.E.2d 862 (Ind. Ap. 2007); *Flickinger v. Flickinger*, 952 So.2d 70 (La. Ap. 1er Cir. 2006); *Schindler v. Schindler*, 209 S.W.3d 35 (Mo. Ap. 2006); *In re State and Estate of Crabtree*, 926 A.2d 825 (N.O. 2007); *Setle v. Setle*, 540 S.E.2d 178 (W. Va. 2000).

menores por la incapacidad de sus padres-- a la obligación del padre alimentante declarado incapacitado, es que tales beneficios son producto de los ingresos generados por el padre alimentante cuando trabajaba:

> ...Social Security benefits are characterized as a substitute for the disabled parent's earnings rather than gratuities from the federal government" […] By recognizing that Social Security benefits are not gratuities from the federal government, but are earned by the disabled parent, these courts realize that unlike welfare and other forms of public assistance, Social Security benefits represent contributions that a worker has made throughout the course of employment; in this sense, benefits represent earnings in much the same way as do benefits paid by an insurance company.

*Williams v. Williams*, 727 N.E.2d 895, 897 (Ohio, 2000). Véase, además, *Brea v. Pardo*, 113 D.P.R. 217, 226 (1982) donde reconocimos que el beneficio de seguro social se origina de cotizaciones a dicho sistema impuestas sobre el esfuerzo y trabajo del alimentante.[9]

---

[9]  Tal razonamiento, ha sido resumido de la siguiente manera:

> ...social security benefits represent contributions that a worker has made throughout the course of employment; in this sense, benefits represent earnings in much the same way as do annuities paid by an insurance policy...The majority view thus regards social security benefits as earnings of the contributing parent and, for this reason, allows benefits paid to the child on the parent's behalf to be credited toward child support obligations.

> ........

> ...Although the benefits are payable directly to the child rather than through the contributing parent, the child's entitlement to payments derives from the parent, and the payments themselves represent earnings from the parent's past contributions. In theory, the actual source of the payments is of no concern to the party having custody as long as the payments are made.

Tori R. A. Kricken, *supra*, pág. 61, citando a *Miller v. Miller*, 890 P.2d  574, 576-577 (Alaska 1995).

Según la autora, Tori R. A. Kricken, lo que parece dictar esa concepción es la descripción analógica del seguro social como póliza de seguro. Tori R. A. Kricken, *supra*, pág. 61. De los pioneros en ilustrar tal parecer fue el Tribunal Supremo de

Kansas, en su decisión paradigmática de *Andler v. Andler*, *supra*, págs. 653-654, al elaborar al respecto:

Social Security benefits paid to the appellee for the benefit of the parties' minor children as the result of the appellant's disability may not, however, be regarded as gratuitous. On the contrary, the payments received by the appellee are for the children as beneficiaries of an insurance policy. The premiums for such policy were paid by the appellant for the children's benefit. The purpose of Social Security is the same as that of an insurance policy with a private carrier, wherein a father insures against his possible future disability and loss of gainful employment by providing for the fulfillment of his moral and legal obligations to his children. This tragedy having occurred, the insurer has paid out benefits to the beneficiaries under its contract of insurance with the appellant, and the purpose has been accomplished.

The United States Congress has seen fit to place the federal government in the role of insurer in order to afford members of the work force the protection and security of insurance against future disability. The fundamental nature of the Social Security system is a form of insurance in every sense of that word. Benefits paid out by a governmental insurer, under a policy of insurance for which the insured has paid premiums, are no more gratuitous than benefits paid out by a private insurance company. The United States Supreme Court had occasion to examine the nature of the Social Security system in Flemming v. Nestor, 363 U.S. 603, 4 L. Ed. 2d 1435, 80 S. Ct. 1367 (1960). After noting that the Social Security system is "social insurance," the court continued:

`  . . .[P]ersons gainfully employed, and those who employ them are taxed to permit the payment of benefits to the retired and disabled, and their dependents. Plainly the expectation is that many members of the present productive work force will in turn become beneficiaries rather than supporters of the program. . . .

. . . The 'right' to Social Security benefits is in one sense 'earned,' for the entire scheme rests on the legislative judgment that those who in their productive years were functioning members of the economy may justly call upon that economy, in their later years, for protection. . . ." (pp. 609, 610.)

The federal district court in *Roston v. Folsom*, 158 F. Supp. 112, 121 (E. D. N. Y. 1957) recognized that Social Security is in the nature of insurance and that the terms "insured," "insurance" and "beneficiary" are used throughout the act. In fact, 42 U. S. C. A. § 402 (d) is entitled "Child's insurance benefits," and uses that term throughout.

The insurance concept here in issue was considered by the federal district court in Schmiedigen v. Celebrezze, 245 F. Supp. 825 (D. D. C. 1965) where the court said:

`  … [T]he payments prescribed by them [the Social Security Act] are not gratuities or matters of grace; they are not public assistance; they are not welfare payments. On the contrary, the law created a contributory insurance system, under which what in effect constitute premiums are

Es ostensible que la normativa esbozada se ha desarrollado en casos donde el crédito corresponde a la situación en la que el padre o madre incapacitado o incapacitada es el mismo que tiene a su haber el pago de una pensión alimentaria. En otras palabras, el raciocinio que sustenta la postura prevaleciente de los distintos estados, ha tenido como condición que el padre obligado a pagar pensión sea quien reciba junto a sus hijos menores, el beneficio por incapacidad del seguro social. Solamente así se justificaría la acreditación de dicho beneficio a la pensión alimentaria, al imputarse como ingreso del alimentante. Sin embargo, ese no es el caso *sub judice*. Aquí la peticionaria es la que fue declarada incapacitada y es por quien los menores reciben el beneficio de seguro social. Es decir, estamos frente a un supuesto en el que la madre

---

shared by employees and employers. Consequently, in spirit at least, if not strictly and technically, the employee, who throughout his working life has contributed part of the premiums in the form of deductions from his wages or salary, should be deemed to have a vested right to the payments prescribed by the statutory scheme, which in effect comprises the terms of his insurance policy. He has earned the benefits; he is not receiving a gift. . . ." (p. 827.)

Because of the unconditional nature of Social Security disability and old age benefits, other courts have held they constitute a satisfaction of a child support order when paid to the divorced mother for the benefit of the minor children...

We hold where a father who has been ordered to make child support payments becomes totally and permanently disabled, and unconditional Social Security payments for the benefit of the minor children are paid to the divorced mother, the father is entitled to credit for such payments by the government against his liability for child support under the divorce decree. The father is entitled to credit, however, only up to the extent of his obligation for monthly payments of child support, but not exceeding it."

custodia, quien no es la obligada a pagar pensión, es la que recibe el beneficio de seguro social y por cuyo conducto los menores también reciben tal beneficio.

Sobre el supuesto que hoy nos toca resolver, no han sido muchas las ocasiones en que los foros estatales de Estados Unidos se han enfrentado al mismo. Sin embargo, en esas instancias, la postura asumida por las distintas jurisdicciones estatales denota una oblicuidad hacia la no acreditación del beneficio de seguro social para con la obligación de alimentar del padre no custodio. Así, por ejemplo, en *Payton v. Payton*, 847 N.E.2d 251, 253 (Ind. Ap. 2006), el tribunal de apelaciones de Indiana, siguiendo los propios comentarios de la tercera Guía para determinar pensiones alimentarias de dicho estado,[10] resolvió que los beneficios de seguro social recibidos por un hijo menor por la incapacidad del padre custodio, no reducen la obligación del padre alimentante no custodio. A igual resultado llegó el Tribunal de Apelaciones de Louisiana en *Pousson v. Pousson*, 861 So. 2d 920, 922-923 (La. Ap. 2003) al señalar:

> After reviewing the jurisprudence and legislative history, the court in its discretion declines to reduce the child support obligation by the social security disability benefits received by Jonathan. The child receives the benefits due to an injury to Therese, the obligee. The benefits are provided to meet Jonathan's needs due to Therese's inability to work and provide. They arise from monies paid by Therese and her

---

[10] El Child Support Guideline 3 de Indiana dispone: "Social Security benefits received by a child because of the custodial parent's disability do not reduce the child support obligation of the noncustodial parent. However, Social Security benefits received by a child because of the noncustodial parent's disability may be applied on a case by case basis as a credit to the noncustodial parent's child support obligation".

> employer. The Court does not believe that John should be allowed to reduce his child support obligation by income Jonathan receives from social security because his mother is disabled and no longer able to work.

De la misma manera resolvió el foro intermedio apelativo de Missouri en *Adams v. Adams*, 108 S.W.3d 821, 830 (Mo. Ap. 2003) y en *Holtgrewe v. Holtgrewe*, 155 S.W.3d 784, 786 (Mo. Ap. 2005). Véase, además *Elsenheimer v. Elsenheimer*, 2 Cal. Rptr.3d 447, 449 (Cal. Ap. 2004).

Lo anterior, refleja la renuencia de los tribunales estatales estadounidenses a conceder un crédito al padre no custodio obligado a pagar una pensión alimentaria a su hijo/hija menor cuando estos reciben un beneficio de seguro social por la incapacidad de su padre/madre custodio. Los resultados allegados por las decisiones plasmadas en estos casos son cónsonos con la postura prevaleciente --según resumida anteriormente en los casos de padres no custodios-- de que el beneficio del seguro social es entendido como parte del ingreso del padre alimentante incapacitado. De esta manera, como la incapacitada en los casos reseñados, incluyendo el de autos, es la que tiene la custodia del menor en controversia, al no ser la alimentante, no se le puede conceder un crédito al obligado a pagar la pensión alimentaria porque se le estaría premiando con un ingreso que no le puede ser atribuible por no ser producto de su trabajo cuando estaba capacitado.

Igualmente importante es mencionar que la casuística norteamericana ha sido consistente al establecer que el beneficio de seguro social que reciben los menores por la

incapacidad de sus padres es parte de los ingresos de estos y no de los padres. Así, los estados de la Unión han interpretado: "the children and not the father are entitled to the funds. They are the beneficiaries, while the father is the representative payee". *Rigel v. Rigel*, 1999 Ohio App. Lexis 2924. "At the outset, we note that the social security benefit paid to or for a child base on the elegibility of a parent is the child´s benefit. While the child´s elegibility is dependent upon the elegibility of the parent and the amount of the child´s benefit is based on the amount of the parent´s benefit, the payment of the child´s benefit does not reduce or otherwise affect the benefit payable to the elegible parent". *In re Marriage of Linda Wright v. Wright*, 924 P.2d 1207, 1209 (Col. Ap. 1996). "...the benefit inures directly to the child, nothwithstanding the prerequisite status of the parent. No indices of the father´s ownership ever attach to these funds". *Mask v. Mask*, *supra*, pág. 886; Fuller *v. Fuller*, 360 N.E.2d 357, 358 (Ohio Ap. 1976). "Thus, the benefits the parties receive for their children are financial assets or income of the children, not gross income of the parties...". *Lawhorn v. Lawhorn*, 850 P.2d 1126, 1128 (Oregon Ap. 1993).[11]

---

[11] Dichas exégesis guardan consonancia con las contenciones de los foros federales a los efectos de que el beneficio de seguro social para los hijos menores tiene la finalidad de proporcionarles cierta seguridad e ingreso por la pérdida de quienes les mantenían: "The purpose of children's benefits is to provide at least some measure of income and security to those who have lost a wage-earner on whom they depended. This is a federal policy, unrelated to state or local laws on marriage or inheritance flowing from the state's power to regulate domestic relations and the passage of property within that state". *Damon v. Secretary of Health, Education & Welfare*, 557 F.2d 31, 34, n. 4 (2do Cir. 1977); *Zizkin v. Weinberger*, 379 F.Supp. 124, 126 (D. Ohio 1973);

Por su parte, en Puerto Rico, para efectos de computar una pensión alimentaria, el inciso (16) del Artículo 2 de la Ley Núm. 5, *supra*, define "ingresos" de la siguiente manera:

(16) *Ingresos.* – Comprende cualquier ganancia, beneficio, rendimiento o fruto derivado de sueldos, jornales o compensación por servicios personales, incluyendo la retribución recibida por servicios prestados como funcionario o empleado del Estado Libre Asociado de Puerto Rico, del gobierno de los Estados Unidos de América, el Distrito de Columbia, las Islas Vírgenes de los Estados Unidos de América, o cualquier territorio o posesión sujeta a la jurisdicción de los Estados Unidos de América según lo permitan las leyes y reglamentos federales aplicables, de cualquier estado de la Unión de los Estados Unidos de América, o de cualquier subdivisión política de los mismos, o de cualquier agencia o instrumentalidad de cualesquiera de las mencionadas entidades en cualquiera que sea la forma en que se pagaren; o de profesiones, oficios, industrias, negocios, comercio o ventas; o de operaciones en propiedad, bien sea mueble o inmueble, que surjan de la posesión o uso del interés en tal propiedad; también los derivados de intereses, rentas, dividendos, beneficios de sociedad, valores o la operación de cualquier negocio explotado con fines de lucro o utilidad; y ganancias, beneficios, rendimientos, fondos, emolumentos o compensación derivados de cualquier procedencia, incluyendo compensaciones como contratista independiente, compensaciones por desempleo, compensaciones por incapacidad, beneficios de retiro y pensiones **o cualquier otro pago que reciba un alimentante** de cualquier persona natural o jurídica. (Énfasis nuestro.)

En ese sentido, el preterido artículo no concibe como ingreso del alimentante el beneficio de seguro social que reciba el menor por la incapacidad de aquél. Tampoco concibe como ingreso del padre o madre custodio no alimentante, el beneficio de los hijos menores por la incapacidad de estos. Es más, de una lectura de la ante dicha disposición, no cabe

_____

*Davis v. Richardson*, 342 F.Supp. 588, 593 (D. Connecticut 1972). Véase, además, *Jiménez v. Weinberger*, 417 U.S. 628, 634 (1974).

duda que es el **alimentante** quien debe recibir la ganancia o el beneficio que se considere a la hora de establecer su ingreso. Es decir, la definición de ingresos se refiere particularmente a los beneficios o ganancias que reciba el alimentante y no el padre o madre custodio.

Sin embargo, en el caso de autos, tal como surge del Informe de la Oficial Examinadora, el beneficio de seguro social se consideró como ingreso de la peticionaria. La Oficial Examinadora arguyó que, aún cuando los menores reciben una cantidad de seguro social que es administrado por la madre, el movimiento económico del hogar donde residen éstos y las cargas económicas existentes se cubren con parte de ese ingreso. Ello, ya que no se probó que la peticionaria depositara el dinero que recibía como beneficio para sus hijos menores de edad en una cuenta de ahorros aparte.[12] Empero, tal proceder no toma en consideración los preceptos que regentan a la Administración de Seguro Social.

En efecto, los beneficios de seguro social que se otorgan bajo la Sección 202 (d)(1) del Social Security Act, *supra*, pueden ser pagados directamente al hijo beneficiario o a otra persona como representante portador (*representative payee*) del primero para que administre los fondos del menor para el uso y beneficio de este. 42 U.S.C.A. sec. 405 (j); 20 C.F.R. sec 404.2001(b), 404.2010(b), 404.2035(a), 404.2040. El representante portador puede ser un padre incapacitado que tenga la custodia del menor que recibe el beneficio de seguro social. 20 C.F.R. 404.2020(d),

---

[12] Véase, Informe y Recomendación, julio 15 de 2008, pág. 76.

404.2021(c)(1). Por supuesto, al representante portador se le requiere que destine dichos fondos para el mantenimiento y mejor interés del menor. 20 C.F.R. sec. 404.1608. Véanse, *In re Marriage of Anthony-Guillar*, 207 P.3d 934, 938 (Colorado, Ap. 2009); *Fuller v. Fuller*, *supra*, pág. 359. Siendo en el presente caso la peticionaria una representante portadora, y no habiéndose probado que esta utilice los fondos para algún fin que no sea el mantenimiento y mejor interés del menor, no existe impedimento para que la madre siga recibiendo los fondos como representante portadora del menor. Por tanto, el mero hecho de que la peticionaria reciba el beneficio de seguro social a nombre del menor, no quiere decir que tal beneficio constituya ingreso o propiedad de la peticionaria.

Sobre el particular, algunos foros al examinar las disposiciones relacionadas a representantes portadores han sostenido que: "... representative payee parents do not "receive" their children's Social Security disability awards". Véase, *In re Unisys Corp. Long-Term Disability Plan ERISA Litigation*, 97 F.3d 710, 716 (3d Cir. 1996); *Carstens v. United States Shoe Corp.'s Long-Term Benefits Disability Plan*, 520 F. Supp. 2d 1165, 1169 (N.D. Cal. 2007). Véase, *Osmar v. Mahan*, 53 P.3d 149 (Alaska 2002), en el que se estableció que los beneficios del seguro social que recibe un hijo menor de edad a través de su madre no deben ser computados como ingresos de esta para determinar su

ingreso.[13] Por tanto, el mero hecho de que uno de los padres represente al menor para efectos de administrar los fondos que reciba producto del seguro social, no convierte esos ingresos, *per se*, en propiedad del padre a no ser que se demuestre que éste no los destine para el mantenimiento y mejor bienestar del menor. Véase, 20 C.F.R. 404.2040.

Por otro lado, la Sección 407(a) del Título 42 del U.S.C. establece que:

(a) In general

The **right of any person to any future payment under this subchapter shall not be transferable** or assignable at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

42 U.S.C. 407(a).

El lenguaje de lo antes citado es claro; al legislar la intención fue que el beneficiario recibiera la totalidad de la pensión a la que tiene derecho. *Vega v. Soto*, 164 D.P.R. 113 (2005). Véase también, *Hisquierdo v. Hisquierdo*, 439 U.S. 572 (1979).

En *Vega v. Soto*, *supra*, dispusimos que en Estados Unidos la normativa en cuanto a proteger el carácter privativo de los beneficios que se reciben bajo el Seguro

---

[13] En *Osmar v. Mahan*, *supra*, se estableció que: "Social security children's insurance benefits payments that the wife's first child from a previous relationship received due to the disability and death of that child's father could not be included in the wife's income for purposes of computing child support." Marian F. Dobbs, *Determining Child & Spousal Support*, Chicago, Thomson West, 1995, sec. 4:25. Véase, además, J. S. Veloso, 20 Alaska L. Rev. 79, 147 (2003).

Social es uniforme. Sobre el particular, expresamos lo siguiente:

> Y lo cierto es que tiene que ser así, ya que la cláusula antiembargo del Social Security Act prohíbe la cesión o transferencia del derecho a recibir pagos futuros y prohíbe, además, que los pagos recibidos o por recibirse, o los derechos reconocidos bajo el estatuto puedan estar sujetos a gravámenes, embargos o procesos legales. Este lenguaje es claro; la intención del legislador fue que el beneficiario recibiese la totalidad de la pensión o renta a la que tiene derecho. Así, conforme lo resuelto en *Hisquierdo,* **esta cláusula antiembargo claramente implica que estos beneficios o pagos son privativos y, por lo tanto, no se pueden afectar por ninguna determinación de los estados;** sobre esto, el campo está ocupado. (Énfasis nuestro) *Íd.,* págs. 124-125.

Como hemos explicado, el dinero que reciben los hijos menores de edad de la peticionaria --en particular, la hija que no es del recurrido-- se considera como ingreso de éstos y no puede entonces computarse como ingreso de la madre custodia. Aquí los que reciben ese beneficio son los hijos menores de edad y no la peticionaria. Ciertamente, por ser los hijos menores de edad, es la madre quien recibe el dinero en nombre de éstos pero ello no cambia la naturaleza personalísima del beneficio.[14] Por ende, es forzoso concluir

---

[14] "A parent´s support obligations cannot be satisfied under the Social Security Act by reaching children´s social security benefits that are based on the parent´s account. Thus, retroactive disability benefits paid to the children of disabled parent were neither assignable nor subject to other legal process, and could not be assigned to a state agency which provided AFDC benefits to the children, even though the children´s entitlement to benefits was determined, in part, on their parent´s disability status. **To hold otherwise would be tantamount to ordering the children to pay for their own support.** Similarly, a state court may not subject social security benefits received by a parent as a representative payee for his or her children to legal process in order to enforce the parent´s legal obligation to make child support. **Accordingly, the benefits paid to a father appointed as representative payee for his children were not subject to garnishments under the Act, since the children, who were not obligated under state law to pay child support, were the beneficiaries, not the father.**" (Énfasis nuestro) 2A Soc. Sec. Law & Prac. Sec. 34:22.

que el beneficio de seguro social es personalísimo y no puede utilizarse para computar el ingreso de una persona quien no es la beneficiaria original.

El que se considerara lo que los hijos menores de la peticionaria reciben como beneficio del seguro social para calcular el ingreso de ésta, sin duda alguna, benefició al recurrido. Al momento de determinar la pensión alimentaria que le correspondía pagar al recurrido, se le imputó a la peticionaria un ingreso que no es real. Por tanto, al computar, la responsabilidad del recurrido disminuyó y, por consiguiente, la pensión que recibiría su hijo menor de edad.

Del Informe y Recomendación de la Oficial Examinadora colegimos que a la peticionaria se le imputó un ingreso de $2,628.74.[15] Procede que se le descuenten a dicha cantidad, los $676.00 que reciben los hijos menores de edad de ésta como parte de los beneficios de seguro social. Esa cantidad no se debe imputar como ingreso de la peticionaria toda vez que responde a un beneficio personalísimo de los menores.

Conforme lo anterior, es evidente que el ingreso que debe imputársele a la peticionaria es de $1,952.74 mensuales. Esta cantidad corresponde a la suma de los beneficios que recibe del seguro social a nombre de ella y

---

[15] El ingreso atribuido a la peticionaria ($2,628.74) se desglosa como sigue:

$1,352.74 – beneficio por incapacidad
$600.00 – producto de una renta
$676.00 – beneficios recibidos por sus hijos menores de edad

Véase, Informe y Recomendación, *supra*, pág. 75.

el dinero producto de una renta. Es a base de ese ingreso que debe calcularse la pensión alimentaria que debe recibir el alimentista, hijo del recurrido. Ciertamente, incidieron los foros inferiores al determinar que la cuantía recibida por los hijos menores de edad, como beneficio del seguro social, era parte del ingreso de la peticionaria.

**V.**

**A.**

En su tercer señalamiento de error, la peticionaria alega que erraron los foros inferiores al ajustar retroactivamente la pensión alimentaria impuesta al recurrido. Plantea que ambos foros lo que realmente hicieron fue concederle una **rebaja** a la pensión alimentaria de manera retroactiva al año 2003. Además, sostiene que las Guías Para Determinar y Modificar Pensiones Alimentarias en Puerto Rico, Reglamento Núm. 7135 de 23 de mayo de 2006, no se puede aplicar retroactivamente porque entraron en vigor en el año 2006 y del mismo surge que su aplicación es prospectiva. Por su parte, el recurrido aduce que su solicitud no se relaciona con una rebaja sino más bien con un **ajuste** de pensión por causa de que, como padre no custodio, se relaciona con el menor el 43% del tiempo. Arguye que conforme el Reglamento Núm. 7135, *supra*, su pensión se debe ajustar, retrotrayéndose al año 2003, cuando se amplió su relación paterno filial con su hijo menor.

El Artículo 3 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3, contiene la regla general sobre

retroactividad de las leyes en nuestro ordenamiento jurídico: "[l]as leyes no tendrán efecto retroactivo, si no dispusieren expresamente lo contrario". Véanse, *Báiz v. Comisión Hípica*, 63 D.P.R. 483, 487 (1944); *Charres v. Arroyo*, 16 D.P.R. 816, 820 (1910); *Sobrinos de Portilla v. Quiñones*, 10 D.P.R. 195, 196 (1906). Sobre este artículo, hemos sostenido que solamente tiene el efecto de una regla general de interpretación de estatutos, no constituyendo sus disposiciones un principio rígido de aplicación absoluta. *Vélez Reyboras v. Srio. de Justicia*, 115 D.P.R. 533, 542 (1984); *Warner Lambert Co. v. Tribunal Superior*, 101 D.P.R. 378, 385 (1973). Por consiguiente, la excepción es la retroactividad. *Asociación de Maestros v. Departamento de Educación*, res. el 15 de junio de 2007, 171 D.P.R.___ (2007), 2007 T.S.P.R. 123, 2007 J.T.S. 129; *Consejo Titulares v. William Hospitality, Inc.*, 168 D.P.R. 101 (2006); *Nieves Cruz v. Universidad de Puerto Rico*, 151 D.P.R. 150, 158 (2000). *Atiles, Admor v. Comisión Industrial*, 77 D.P.R. 511, 512 (1954).

Aunque la regla general subsumida en la referida disposición establece que la retroactividad debe surgir de forma expresa, hemos resuelto que la voluntad implícita del legislador puede desprenderse del estatuto. *Vélez Reyboras v. Secretario de Justicia*, *supra*, pág. 542, citando a Albaladejo; *Warner Lambert v. Tribunal Superior*, *supra*, pág. 386. Por lo tanto, la intención del legislador de darle efecto retroactivo a una ley puede ser expresa o tácita. *Consejo Titulares v. William Hospitality, supra*. Empero,

hemos señalado que la intención del legislador de darle efecto retroactivo a una ley debe desprenderse del estatuto ya que por ser un acto excepcional, debe aparecer expresamente o surgir claramente del estatuto. *Nieves Cruz v. Universidad de Puerto Rico*, *supra*; *Vázquez v. Morales*, 114 D.P.R. 822, 831 (1983). A tales fines, hemos sostenido que ante la omisión de un mandato expreso del legislador, solamente procede impartirle efecto retroactivo a una ley cuando es obvio y patente el propósito legislativo en casos en los cuales la aplicación retroactiva es necesaria para corregir un grave mal social y así poder para hacer justicia. *Nieves Cruz v. Universidad de Puerto Rico*, *supra*, pág. 159.

Es menester destacar que el principio de la irretroactividad de las leyes se extiende a la aplicación de los reglamentos administrativos: "La palabra Leyes utilizada por el artículo 3 ha de entenderse en sentido amplio, por lo que el principio de irretroactividad deberá aplicarse a las demás normas jurídicas; por ejemplo, a las disposiciones administrativas". Francisco Bonet Ramón, *Compendio de Derecho Civil*, Madrid, Editorial Revista de Derecho Privado, 1959, Tomo I, pág. 203. En ese sentido, hay que tomar en consideración la máxima del Derecho Administrativo, de que el poder de reglamentación de las agencias proviene de la facultad que les delega la rama legislativa. Por consiguiente, cuando se vaya a aplicar el principio de irretroactividad de las leyes a un reglamento "es necesario determinar en primer lugar, si el reglamento tiene efecto

retroactivo; en segundo lugar, si la agencia que lo adopta tiene la facultad delegada de otorgarle efecto retroactivo a ese reglamento; y, en tercer lugar, si el efecto retroactivo del reglamento es válido". *Maldonado v. Junta de Planificación*, res. el 10 de mayo de 2007, 171 D.P.R.___ (2007), 2007 T.S.P.R. 87, 2007 J.T.S. 92 (Jueza Asociada señora Fiol Matta, disintiendo).

**V.**

**B.**

Apliquemos el marco doctrinal proyectado al presente caso. Luego de un análisis ponderado de las circunstancias particulares que rodean al caso en cuestión, debemos señalar que no estamos ante una reducción o rebaja de pensión sino a un ajuste de pensión alimentaria según concebido por el Artículo 7(B) del Reglamento Núm. 7135, *supra*.[16] De esa forma, la petición del recurrido está gobernada por el mencionado artículo, que en lo pertinente lee de la siguiente forma:

1. En aquellos casos excepcionales en los que el/la alimentista pase el veinte por ciento (20%) o más del tiempo con la persona no custodia, ésta última podrá solicitar, y el/la juzgador/a podrá ordenar, que se ajuste la pensión alimentaria básica cuando se cumpla con uno de los siguientes requisitos:

   a) Exista un plan de relaciones paterno/materno filiales fijado por el Tribunal, o

   b) Exista una estipulación en la cual la persona custodia y la no custodia establezcan un plan de relaciones paterno/materno filiales. [...].

---

[16] Cabe señalar que el concepto de ajuste de pensión es uno novel que incorporó el Reglamento Núm. 7135, *supra*.

........

f) No obstante, en los casos en los que con posterioridad a la fijación o modificación de una pensión alimentaria básica, el Tribunal establezca o amplíe un plan de relaciones paterno/materno filiales o resuelva cualquier controversia relacionada con el referido plan, el/la juzgador/a podrá, a solicitud de parte, ajustar la pensión previamente establecida.

c) Cuando se determine que la persona no custodia incumplió con el plan de relaciones paterno/materno filiales; (1) se eliminará el ajuste de la pensión; (2) se computará la pensión sin ajustar desde el momento en que la persona custodia informó sobre el incumplimiento del plan; y (3) la persona no custodia no podrá solicitar el ajuste hasta que se revise la pensión establecida.

Artículo 7(B) del Reglamento Núm. 7135, *supra*.

En el caso de autos, ha quedado establecido de manera indubitada que el recurrido se relaciona con su hijo menor desde el 2003, el 43% del tiempo. Es decir, más del doble del tiempo (20%) al que alude el referido artículo.[17] Ahora bien, la interrogante que queda por resolver es si ¿debemos

---

[17] Del Informe y Recomendación de la Oficial Examinadora de Pensiones se desprende que:

"El menor comparte con el demandado (recurrido) setenta y dos (72) horas a la semana, a saber:

3 horas los martes
9 horas los jueves
24 horas los viernes
24 horas los sábados
12 horas los domingos

Eso equivale a 3.744 horas al año, divididas entre las 8,760 horas que tiene el año, equivale a un porciento de tiempo de 43%. A la totalidad del tiempo (100%) se le resta el 43% que equivale a las relaciones paterno filiales establecidas, por lo que la pensión alimentaria básica tiene que ajustarte en un 57%." (Énfasis suplido.) Informe y Recomendación, *supra*, pág. 75.

aplicar el Reglamento Núm. 7135, *supra* de manera retroactiva o si debe aplicarse desde el año 2006 que fue cuando el reglamento entró en vigor?

El recurrido plantea que el ajuste permitido por el Artículo 7(B) del Reglamento 7135, *supra*, debe retrotraerse al año 2003 que fue cuando se establecieron y ampliaron las últimas relaciones paterno filiales. De hecho, el informe preparado por la Oficial Examinadora de Pensiones avaló esa contención. Empero, la Examinadora de Pensiones dejó a cargo de los tribunales decidir si el susodicho reglamento se debía retrotraer al 2003 o si debía aplicar desde el 2006 en adelante que fue cuando se aprobó e incorporó el concepto de ajuste de pensión.[18]

En ese ánimo, el Tribunal de Apelaciones confirmó al Tribunal de Primera Instancia al resolver que el recurrido pasaba desde el 2003 el 43% del tiempo total del año con el menor, cubriéndole todas sus necesidades. Así, resolvió que no erró el foro de instancia al ordenar que el ajuste de pensión alimentaria básica se hiciera efectivo al año 2003.

El Reglamento Núm. 7135, *supra*, dispone en lo pertinente que: "...entrará en vigor a los treinta (30) días

---

[18] Sobre el particular, la Oficial Examinadora de Pensiones expuso, en lo pertinente:

"Entendemos que en aras de la justicia se debe declarar CON LUGAR el planteamiento del demandado (recurrido) y hacer el ajuste en la pensión alimentaria desde el 2003. Sin embargo, la directriz del Tribunal de Apelaciones [antes de emitir Sentencia en el caso de autos] fue que se considerara el ajuste de la pensión alimentaria de acuerdo a las relaciones paterno filiales existentes a partir de mayo de 2006 cuando se aprobó e incorporó este concepto en el Reglamento 7135, *supra*. Así que el tribunal debe decidir hasta qué punto está "limitado" por esa directriz del Tribunal de Apelaciones." Informe y Recomendación, *supra*, pág. 74.

de su presentación ante el Departamento de Estado, según establecido en la Ley de Procedimiento Administrativo Uniforme" y que "[e]l mismo aplicará a todos los casos que estén pendientes y a los que se presenten con posterioridad a la fecha de su vigencia". Artículo 12 del Reglamento Núm. 7135, *supra*. Surge de los autos que la vigencia de este Reglamento es desde el 24 de mayo de 2006. Es decir, la aplicabilidad del Reglamento se circunscribe a los casos presentados luego del 24 de mayo de 2006 y a los que estén pendientes a esa fecha.

Sin embargo, del Reglamento Núm. 7135, *supra*, no surge de modo alguno que el ajuste de pensión alimentaria por ampliación de las relaciones paterno/materno filiales pueda hacerse retroactivamente. Por el contrario, el propio Artículo 12 del Reglamento 7135, *supra*, establece de forma palmaria que su aplicación debe ser prospectiva, al exponer que su entrada en vigor será a los 30 días de su presentación en el Departamento de Estado sin especificar si tendrá efecto retroactivo.

De la misma forma, el Artículo 7 (B)(1)(f) del Reglamento 7135, *supra*, según citado previamente, establece que en los casos en los que con posterioridad a la fijación o modificación de una pensión alimentaria básica, el Tribunal amplíe un plan de relaciones paterno filiales, el juzgador podrá, a solicitud de parte, ajustar la pensión previamente establecida. Como puede notarse, *prima facie*, no hay ningún indicativo en torno a que el referido reglamento, en los casos de ajuste de pensión alimentaria por ampliación

de relaciones paterno filiales, pueda aplicarse de forma retroactiva con independencia a la fecha de su vigencia. Tampoco surge del propósito del Reglamento esa pretensión de retroactividad ya que se limita a señalar que: "El propósito de este Reglamento es establecer las guías mandatorias para determinar las pensiones alimentarias de los/as alimentistas menores de edad en Puerto Rico, basadas en criterios numéricos y descriptivos; los cuales faciliten el cómputo de la cuantía de la obligación alimentaria". Artículo 3 del Reglamento 7135, *supra*.

Por otro lado, el Artículo 2 del Reglamento 7135, *supra* señala que este fue emitido de conformidad con el Artículo 19 de la Ley Núm. 5, *supra*. Dicho artículo establece que el/la Administrador/a de la ASUME, en coordinación con el/la Director/a Administrativo/a de la Oficina de la Administración de los Tribunales (OAT), preparará y adoptará las guías para determinar las pensiones alimentarias de los/as menores de edad en Puerto Rico. Al examinar le Ley Núm. 5, *supra*, no hemos encontrado ninguna disposición que de manera expresa permita a la ASUME conceder efecto retroactivo a los reglamentos que establecen las guías para determinar y modificar pensiones alimentarias como ocurre con el Reglamento 7135, *supra*.

Tampoco hemos encontrado que de manera tácita se haya pretendido por el legislador hacer asequible que los reglamentos sobre las guías para determinar y modificar pensiones alimentarias puedan tener efecto retroactivo, máximo cuando lo que se busca es que se disminuya la pensión

alimentaria establecida.[19] Surge de la Declaración de política pública del Artículo 3 de la Ley Núm. 5, 8 L.P.R.A. sec. 502, que es parte de la política pública del Estado Libre Asociado de Puerto Rico procurar que las personas legalmente responsables contribuyan a la manutención y bienestar de sus hijos o dependientes y que las disposiciones de dicha ley deben interpretarse liberalmente a favor de los mejores intereses del menor o alimentista que necesita alimentos. *A contrario sensu*, lo ya mencionado nos mueve a pensar que la intención legislativa no fue permitir que la ASUME pudiera promulgar reglamentos de aplicación retroactiva que pudieran menguar de alguna forma las pensiones alimentarias. Esto es así, porque lo más importante para el legislador es el bienestar del menor, el cual se podría afectar ante la disminución de la pensión alimentaria aunque se trate de un ajuste. En ese sentido, no podemos ni debemos refrendar la aplicación retroactiva de un reglamento que a todas luces no puede comportar tal pretensión.

---

[19] Del Artículo 19 (b) de la Ley Núm. 5, *supra*, se desprende que la intención legislativa al promulgar la referida ley, no fue permitir que las pensiones alimentarias puedan disminuirse de forma retroactiva. En lo pertinente dicho artículo señala que: "La reducción de la pensión alimentaria será efectiva desde la fecha en que el tribunal o el Administrador decida sobre la petición de reducción [...] Además, no estará sujeta a reducción retroactiva en Puerto Rico ni en ningún estado [los pagos por concepto de pensiones alimentarias], excepto que en circunstancias extraordinarias el tribunal o el Administrador podrá hacer efectiva la reducción a la fecha de la notificación de la petición de reducción al alimentista o acreedor o de la notificación de la intención de modificar, según sea el caso". Ciertamente, aunque no estamos ante un caso de reducción de pensión *per se* —pues se trata más bien de una solicitud de ajuste de pensión— lo anterior denota que el legislador no quiso delegarle a la ASUME la facultad de aplicar sus reglamentos de manera retroactiva cuando ello conlleve disminuir una pensión alimentaria.

Por entender que de la Ley Núm. 5, *supra*, no surge la facultad expresa ni tácita de la ASUME para aprobar retroactivamente los reglamentos sobre las guías para determinar y modificar pensiones alimentarias; y que del Reglamento 7135, *supra*, tampoco surge su aplicabilidad retroactiva, no hace falta entrar a determinar la validez del susodicho reglamento.

Sin ánimo de soslayar lo ya determinado, cabe destacar que la controversia que aquí nos concierne ha estado pendiente desde antes de la aprobación del Reglamento 7135, *supra*. La demanda de alimentos fue presentada hace más de 11 años, a saber, el 25 de noviembre de 1997. Como ya mencionamos, del propio Reglamento 7135, *supra*, se desprende que su aplicación y vigencia se remontan al año 2006 en adelante. Por tanto, resolvemos que el Reglamento 7135, *supra* debe aplicarse al caso de autos prospectivamente desde su fecha de vigencia que fue el 24 de mayo de 2006. Es decir, se debe ajustar la pensión alimentaria básica del recurrido desde la fecha señalada ya que es un hecho irrefutable que éste comparte con su hijo más del 43% del tiempo. Eso sería lo justo al tratarse de un padre que como bien señaló la Oficial Examinadora de Pensiones: "Es una realidad que el demandado siempre ha sido un padre presente en la crianza de su hijo, que el menor comparte prácticamente toda la semana con éste y que no sólo al presente, sino en el 2003..." Informe y Recomendación, *supra*, pág. 74.

Por tal, entendemos que el error señalado se cometió toda vez que el ajuste en la pensión alimentaria que tiene a su haber sufragar el recurrido, no procedía retroactivamente al año 2003 sino que debe ajustarse al momento en que entró en vigor el Reglamento 7135, *supra*, que fue el año 2006.

## VI.

Por los fundamentos expuestos, se revoca la sentencia dictada por el Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que continúen los procedimientos conforme a lo dispuesto en la Opinión que antecede.

Se dictará Sentencia de Conformidad.

Mildred G. Pabón Charneco
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Olga Torres Rodríguez

     Peticionaria

       v.

                           CC-2008-0950

Jesús Carrasquillo Nieves

     Recurrido


SENTENCIA

San Juan, Puerto Rico a 29 de diciembre de 2009.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca la Sentencia emitida por el Tribunal de Apelaciones y se devuelve el presente caso al Tribunal de Primera Instancia para que continúe con los procedimientos conforme a lo aquí dispuesto.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton, concurre y disiente con la siguiente expresión:

> El Juez Presidente señor Hernández Denton concurre con el dictamen emitido por este Tribunal al revocar la sentencia del Tribunal de Apelaciones y devolver el caso al Tribunal de Primera Instancia. Coincide con la determinación del Tribunal de que se deben excluir del cómputo de ingresos de la madre custodia los beneficios de Seguro Social que recibe el menor, así como con la determinación de que las Guías Para Determinar y Modificar las Pensiones Alimentarias en Puerto Rico no tienen carácter retroactivo.

Sin embargo, disiente de la parte III de la Opinión por entender que los honorarios de abogado se pueden incluir en un plan de pago, toda vez que, a la luz de nuestra jurisprudencia, éstos se consideran parte de los alimentos a los que tiene derecho el menor.

La Juez Asociada señora Rodríguez Rodríguez concurre y disiente haciendo constar la siguiente expresión:

La Juez Asociada señora Rodríguez Rodríguez disiente de la determinación de la mayoría de que la partida de honorarios de abogado no puede ser incorporada al monto de lo adeudado en concepto de alimentos y su pago administrado por la Administración para el Sustento de Menores.

Concurre con el resultado en cuanto a todo lo demás.

El Juez Asociado señor Rivera Pérez no intervino. El Juez Asociado señor Martínez Torres está inhibido.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo