Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| SAMUEL HERRERA DÍAZ<br><br>Apelado<br><br>v.<br><br>MILDRED CASTRO LÓPEZ<br><br>Apelante | KLAN202300086 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Humacao<br><br>Caso Núm.: HU2018CV00745 (206)<br><br>Sobre: DIVISIÓN DE COMUNIDAD DE BIENES |

Panel integrado por su presidente, el Juez Figueroa Cabán, la Jueza Grana Martínez, el Juez Rodríguez Flores y el Juez Monge Gómez

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de mayo de 2023.

Comparece Mildred Castro López (Apelante o señora Castro López) mediante recurso de *Apelación* y nos solicita que revoquemos la *Sentencia* que emitió el Tribunal de Primera Instancia, Sala Superior de Humacao (TPI), el 17 de noviembre de 2022.[1] En el referido dictamen, el foro de instancia declaró ha lugar la demanda incoada por el señor Samuel Herrera Díaz (Recurrido o señor Herrera Díaz) sobre división, liquidación y partición de la comunidad de bienes postganancial, luego de concluir que el señor Herrera Díaz cumplió con el pago que le correspondía a la señora Castro López por concepto de las aportaciones hechas al plan de pensiones perteneciente al Apelado durante el matrimonio.

---

[1] La *Sentencia* fue archivada y notificada el mismo 17 de noviembre de 2022. Véase el Anejo I en el Apéndice del Recurso de Apelación.

Número Identificador

SEN2023 _____

Por los fundamentos que exponemos a continuación, confirmamos la *Sentencia* apelada.

**I.**

La señora Castro López contrajo matrimonio con el señor Herrera Díaz el 29 de diciembre de 1973, en Bayamón, Puerto Rico. Poco más de 10 años después, el 11 de diciembre de 1985, la Corte de Distrito del Condado Tarrant de Texas, Estados Unidos, decretó rota y disuelta la unión matrimonial.[2] Como parte del procedimiento de divorcio, el tribunal de Texas dictaminó que la señora Castro López tenía derecho a recibir determinado por ciento de participación de los beneficios del plan de retiro del señor Herrera Díaz, que surgían de las aportaciones que éste hizo al plan durante la vigencia del matrimonio.

En su parte pertinente, el Tribunal de Distrito decretó lo siguiente:

> IT IS ORDERED that a percentage of said accrued benefit determined by taking one half of the fraction calculated by dividing the total number of months Respondent was employed while married to Petitioner by the total number of months Respondent was employed be segregated, assigned and transferred to the exclusive beneficial interest of Petitioner.
>
> The benefits hereby assigned to Petitioner, together with the interests, earnings and gains thereon, shall be paid in the same form subject to the same options and restrictions as the benefits payable to Respondent under the terms of the plan.
>
> The benefits hereby assigned to Petitioner shall be paid to Petitioner on the earliest date benefits could be paid to Respondent under the terms of the plan, notwithstanding Respondents continuing employment by any employer sponsoring the plan, or Respondent´s right to accruals of additional benefits under the terms of the plan.
>
> [...][3].

---

[2] Véase el Anejo XI en el Apéndice del Recurso de Apelación.
[3] *Íd.*

Posteriormente, en el año 2006, el señor Herrera Díaz se acogió a la jubilación de su empleo en la agencia federal, Federal Highway Administration. Ese mismo año, la Oficina de Manejo de Personal del sistema federal (OPM, por sus siglas en inglés) ejecutó la parte de la Sentencia que le concedió a la señora Castro López parte de los beneficios del plan de retiro del señor Herrera Díaz.[4] En particular, le adjudicó una cantidad correspondiente al 15.85% de la pensión federal mensual del señor Herrera Díaz.[5]

A principios del año 2017, el señor Herrera Díaz presentó ante el Tribunal de Primera Instancia de Humacao una *Demanda* sobre convalidación de la sentencia extranjera de divorcio que emitió la Corte de Distrito de Texas, para que se autorizara su ejecución.[6] Conforme a ello, el 11 de mayo de 2017, el TPI declaró con lugar la *Demanda* y le dio entera validez, fe y crédito, cumplimiento y vigor en Puerto Rico al decreto de divorcio.[7]

Más adelante, el 21 de agosto de 2018, el señor Herrera Díaz presentó una *Demanda* sobre división, liquidación y partición de la comunidad de bienes.[8] Sobre este particular, expuso que la señora Castro López ha recibido en exceso los beneficios del plan de retiro del señor Herrera Díaz que le correspondían, conforme al dictamen emitido por la Corte de Distrito de Texas. Por consiguiente, solicitó ser liberado de toda responsabilidad, obligación o deber respecto a la señora Castro López y que se diera por cumplido, en su totalidad, el pago de la participación que le correspondía en el plan de retiro.

---

[4] *Íd.*, Anejo XII.
[5] *Íd.*
[6] Véase el Apéndice 27 en el Alegato del Apelado. Proceso conocido como exequátur, según establecido en la Regla 55 de Procedimiento Civil, 32 LPRA Ap. V, R. 55.
[7] *Íd.*, Apéndice 36.
[8] Véase el Anejo III, Apéndice del Recurso de Apelación.

En su *Contestación a Demanda,* la señora Castro López negó la mayoría de las alegaciones.[9] No obstante, argumentó que el señor Herrera Díaz no tenía razón en su planteamiento, ya que los derechos que ostenta no son producto de una suma específica, sino del producto de aportación al plan, más las aportaciones del gobierno federal e intereses que se produzcan por el resto de su vida. También, levantó como defensa que el asunto traído por el señor Herrera Díaz ante los tribunales de Puerto Rico debía dilucidarse en el Tribunal de Texas.

Después de considerar las posiciones de las partes y evaluar la prueba documental admitida, el 17 de noviembre de 2022, el TPI emitió su *Sentencia.*[10] En ésta declaró ha lugar la *Demanda* y decretó saldado el crédito que le correspondía a la señora Castro López, sobre los beneficios acumulados durante el matrimonio en el plan de retiro del señor Herrera Díaz.

Insatisfecha con lo resuelto, la señora Castro López presentó *Moción de Reconsideración,* en la que expuso que la *Sentencia* omitía los procesos y determinaciones que llevó a cabo la Corte de Texas sobre la controversia planteada, que fue atendida y resuelta por el gobierno federal a tenor con las leyes y reglamentos federales.[11] Argumentó que el dictamen emitido hace 37 años, no podía ser enmendado ni por la Corte de Texas, ni por el Tribunal de Primera Instancia de Puerto Rico, por haber advenido final y firme. Sostuvo que en ninguna parte de la *Sentencia* de Texas se fijó cantidad específica como cantidad máxima a ser recibida por ésta, como tampoco se decretó término alguno de la pensión. Por último, la señora Castro López razonó que la Sentencia apelada es errada, pues limita su participación en el plan de retiro del señor

---

[9] *Íd.*, Anejo IV.
[10] *Íd.*, Anejo I.
[11] *Íd.*, Anejo VIII.

Herrera Díaz a un 50% de los beneficios acumulados durante el matrimonio.

El señor Herrera Díaz presentó su *Oposición a Solicitud de Reconsideración*, mediante la cual expuso que la señora Castro López se equivoca en su análisis y apreciación de la controversia, pues basa sus argumentos en que las pensiones son pagadas por el gobierno federal, de acuerdo con las leyes y reglamentos federales aplicables. Argumentó que en este caso no se trata de dos pensiones separadas y distintas, sino de una sola pensión que le corresponde exclusivamente al señor Herrera Díaz por su trabajo para el gobierno federal. Expuso que la señora Castro López no es acreedora, por derecho propio, a la pensión que reclama, sino a un crédito por la mitad de las aportaciones hechas al plan de retiro, durante la vigencia del matrimonio entre las partes. Arguyó que el total de las referidas aportaciones ascendía a $22,447.89, por lo que le correspondía un crédito de $11,238.95 y no la suma de $168,115.44, que ya fue pagada y que representa más de la suma a la que tenía derecho.

El 29 de diciembre de 2022, el tribunal apelado emitió una Orden, en la que declaró no ha lugar la Moción de Reconsideración que presentó la señora Castro López.[12]

Inconforme, la parte peticionaria presentó el recurso de epígrafe, en el que señaló los siguientes dos errores:

> ERRÓ EL HONORABLE TRIBUNAL AL INTERPRETAR EQUIVOCADAMENTE LAS DISPOSICIONES DE LA SENTENCIA DE DIVORCIO DICTADA EN TEXAS, AL DESCONOCER EN ABSOLUTO LA DECISIÓN DE LA AGENCIA FEDERAL DE PENSIONES OPM, AL RESOLVER LAS CONTROVERSIAS EN ESTE CASO EXCLUSIVAMENTE EN BASE AL DERECHO PUERTORRIQUEÑO, IGNORANDO LAS DISPOSICIONES FEDERALES QUE LE SON APLICABLES.
>
> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL CONCLUIR QUE SE HA CUMPLIDO EN SU TOTALIDAD CON EL PAGO DE LA PARTICIPACIÓN DE LA DEMANDADA, SIN HABER HECHO

---

[12] *Íd.*, Anejo X.

DETERMINACIONES DE HECHO SOBRE LAS CANTIDADES A QUE TENÍA DERECHO, CON LOS INTERESES, GANANCIAS Y DEMÁS EMOLUMENTOS QUE LE RECONOCE LA SENTENCIA DE DIVORCIO Y LAS DISPOSICIONES FEDERALES APLICABLES.

## II.

## A.

## El Régimen de Sociedad Legal de Gananciales

Al contraer matrimonio, los esposos determinan el régimen económico que regirá su matrimonio. *Roselló Puig v. Rodríguez Cruz,* 183 DPR 81, 92-93 (2011). De acuerdo con el Art. 1267 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 3551, a los matrimonios les aplica el régimen económico de sociedad legal de gananciales, salvo que existan capitulaciones matrimoniales.[13] Se reputan gananciales todos los bienes del matrimonio, mientras no se pruebe que pertenecen privativamente al marido o a la mujer. 31 LPRA sec. 3647. El carácter ganancial de los bienes obtenidos durante el matrimonio es controvertible. La parte que alegue el carácter privativo del determinado bien tendrá el peso de la prueba para derrotar presunción *iuris tantum* de gananciabilidad. *Muñiz Noriega v. Muñoz Bonet,* 177 DPR 967, 980 (2010).

Durante el matrimonio, ambos cónyuges son codueños y administradores de la totalidad del patrimonio matrimonial. *SLG Báez-Casanova v. Fernández,* 193 DPR 192, 197 (2015); *Montalván v. Rodríguez,* 161 DPR 411, 420 (2004).

El Art. 1301 del Código Civil de 1930, 31 LPRA sec. 3641, enumera como bienes gananciales: (1) los adquiridos por título oneroso durante el matrimonio a costa del caudal común para la comunidad o para uno solo de los esposos, (2) los obtenidos por la industria, sueldo o trabajo de los cónyuges o de cualquiera de ellos

---

[13] El Código Civil de 1930, al que hacemos referencia, fue derogado por la Ley Núm. 55-2020, conocida como el Código Civil de Puerto Rico de 2020. No obstante, con el fin de adjudicar la controversia ante nuestra consideración, utilizaremos las disposiciones del código derogado, debido a que éste era el que estaba vigente al momento de los hechos que originaron la controversia.

y (3) los frutos, rentas o interés percibidos o devengados durante la vigencia del matrimonio procedente de los bienes comunes o de los peculiares de cada uno de los cónyuges.

Como anticipamos, todos los bienes del matrimonio se reputan gananciales, mientras no se pruebe que pertenecen privativamente al marido o a la mujer. Al igual que los bienes gananciales, las deudas y obligaciones asumidas durante el matrimonio por cualquiera de los cónyuges gozan de una presunción de ganancial controvertible. Una deuda u obligación no es ganancial si se demuestra que se contrajo para el beneficio exclusivo de uno de los cónyuges y no sirvió para el interés de la familia, o que se efectuó con el ánimo de perjudicar o defraudar al otro cónyuge. *Muñiz Noriega v. Muñoz Bonet,* 177 DPR 967, 981 (2010); *WRC Props., Inc. v. Santana,* 116 DPR 127, 134-135 (1985); *Pauneto v. Núñez,* 115 DPR 591, 597 (1984).

Por otro lado, el Art. 1308, 31 LPRA sec. 3661, define como obligaciones gananciales: (1) las deudas y obligaciones contraídas durante el matrimonio por cualquiera de los cónyuges, (2) los atrasos o créditos devengados durante el matrimonio de las obligaciones que afectan, tanto los bienes propios como los gananciales, (3) las reparaciones menores o de mera conservación hechas durante el matrimonio en los bienes particulares de cualquiera de los cónyuges, (4) las reparaciones mayores o menores de los bienes gananciales, (5) el sostenimiento familiar, la educación de los hijos comunes y de los hijos de cualquiera de los cónyuges.

El Código Civil de 1930 reconoce que el régimen de bienes gananciales puede coexistir con el patrimonio individual de cada cónyuge. Así pues, el Art. 1299, 3 LPRA sec. 3631, dispone que son bienes propios de cada uno de los cónyuges: (1) los que aporte al matrimonio como de su pertenencia, (2) los que adquiere durante el matrimonio a título lucrativo, bien sea por donación,

legado o herencia, (3) los adquiridos por derecho de retracto o por permuta con otros bienes pertenecientes a uno solo de los cónyuges, y (4) aquellos bienes comprados con dinero exclusivo de un cónyuge particular.

La sociedad legal de gananciales concluye y se extingue al disolverse el matrimonio. Art. 1315, 31 LPRA sec. 3681. Como consecuencia, las ganancias o los beneficios obtenidos durante su vigencia se adjudican por mitad a los excónyuges. Art. 1295, 31 LPRA sec. 3621; *Montalván v. Rodríguez*, supra, pág. 446.

Los Arts. 1316-1323 del Código Civil, 31 LPRA secs. 3691-3697, establecen la forma en que se liquidará la sociedad legal de gananciales. El Art. 1316, 31 LPRA sec. 3691, establece la necesidad de realizar un inventario, luego de disuelta la sociedad y salvo las excepciones que se contemplan en dicho artículo. El inventario incluirá para ser colacionadas: (1) las cantidades pagadas por la sociedad de gananciales que deben rebajarse del capital del marido o de la mujer y (2) el importe de las donaciones o enajenaciones que deben considerarse ilegales o fraudulentas. Art. 1317 del Código Civil, 31 LPRA sec. 3692. El capital correspondiente al marido y a la mujer será pagado hasta donde alcance el caudal inventariado, luego de pagadas las deudas, cargas y obligaciones de la sociedad legal de gananciales. Art. 1319, 31 LPRA sec. 3694. El remanente que exista luego de las deducciones constituirá el haber de la sociedad de gananciales. Art. 1320, 31 LPRA sec. 3695. La exesposa y el exesposo se dividirán por mitad el remanente líquido de los bienes gananciales. Art. 1322, 31 LPRA sec. 3697.

**B.**

**La Comunidad Post Ganancial**

La disolución del matrimonio trae consigo el nacimiento de una comunidad ordinaria de bienes entre los excónyuges, compuesta por todos los bienes del haber antes ganancial. Ambos

participarán en la comunidad en partes iguales, mediante cuotas independientes, alienables y homogéneas. Los excónyuges poseen una cuota abstracta, independiente y alienable y tendrán el derecho a intervenir en la administración de la comunidad y a pedir su división. A esta comunidad también se le conoce como comunidad postganancial. *Pagán Rodríguez v. Registradora,* 177 DPR 522, 532-533 (2009); *Montalván v. Rodríguez,* 161 DPR 411, 421 (2004); *Residentes Sagrado Corazón v. Arsuaga,* 160 DPR 289, 305-306 (2003). La disolución del matrimonio por divorcio conlleva la ruptura completa del vínculo matrimonial y la separación de todos los bienes y propiedad. Art. 105 del Código Civil de Puerto Rico, 31 LPRA sec. 381.

La comunidad postganancial está gobernada por los Arts. 326 a 340 del Código Civil, 31 LPRA secs. 1271-1285, a falta de contrato o disposiciones especiales. Esta comunidad existe indefinidamente hasta que se liquide la cosa común a solicitud de cualquiera de las partes. Durante su vigencia, se mezclan y confunden provisionalmente los bienes de los excónyuges, porque se producen frutos, se saldan deudas, se obtienen ganancias o se sufren pérdidas y gastos. Aunque existe una presunta igualdad de cuotas, está sujeta a ser rebatida por prueba pertinente. Al así justipreciar se debe examinar si el aumento o disminución del valor del patrimonio al momento de la liquidación responde al mero pasar del tiempo o a la gestión exclusiva de uno de los cónyuges. Cuando la presunción de equivalencia es rebatida, el aumento en valor del bien o en la producción de frutos se dividirá conforme al trabajo y gestión de cada excónyuge. *Díaz Rodríguez v. García Neris,* 208 DPR 706, 717 (2022). Por consiguiente, en la adjudicación final de la participación que corresponde a cada excónyuge, el tribunal debe considerar si existe prueba de que uno puede interponer frente al otro un crédito por los cambios y

operaciones en el haber común. *Montalván v. Rodríguez,* supra, págs. 422-423.

## C.

### Pensiones por Retiro

En cuanto a las pensiones de retiro, el Art. 1303 del Código Civil, 31 LPRA sec. 3643, establece que el derecho de pensión, perteneciente a uno de los cónyuges, es privativo. Sin embargo, nuestro ordenamiento dispone que las cantidades abonadas con fondos gananciales por el cónyuge beneficiario para constituir el plan de pensión se reputan gananciales y están sujetas a su inventario y liquidación tras la disolución de la sociedad. *Íd.*; *Maldonado v. Tribunal Superior*, 100 DPR 370, 375 (1972). Precisamente, en *Maldonado v. Tribunal Superior*, supra, el Tribunal Supremo de Puerto Rico reiteró la doctrina de que las pensiones de retiro son por su naturaleza personalísimas. Es decir, son bienes exclusivos de su titular, aunque se adquieran a costa del caudal común de los esposos o por su industria, sueldo o trabajo. Art. 1301 del Código Civil, 31 LPRA sec. 3641. Al momento de liquidar la comunidad de bienes postganancial, el otro cónyuge puede reclamar **únicamente** las aportaciones hechas al plan de pensiones durante el matrimonio.

A pesar de lo establecido en el Art. 1301, *supra,* sobre los bienes gananciales, existen ciertos bienes que por razón de su finalidad y naturaleza personalísima no acrecen el haber común. *Maldonado v. Tribunal Superior*, supra, pág. 377. Específicamente, el Tribunal Supremo ha exceptuado de esta norma general las pensiones por retiro y otros sistemas similares. *Maldonado v. Tribunal Superior*, supra; *Rosa Resto v. Rodríguez Solís*, 111 DPR 89, 92 (1981); *Delucca Román v. Colón Nieves,* 119 DPR 720, 727 (1987); *Benítez Guzmán v. García Merced,* 126 DPR 302, 304-305

(1990); *Pilot Life Ins. Co. v. Crespo Martínez*, 136 DPR 624, 638-639 (1994); *Vega v. Soto*, 164 DPR 113, 128-129 (2005).

En *Maldonado v. Tribunal Superior*, supra, pág. 375, el tribunal explicó esta norma al señalar que "[l]a doctrina considera que la naturaleza personalísima de estas anualidades determinan su carácter privativo. Se trata de créditos *intuitu personae*—esto es en consideración a la persona—que, por su propia naturaleza, están excluidos de la masa común". Es esta naturaleza personalísima lo que determina su carácter privativo. El Tribunal Supremo concluyó que, independiente del modo de adquisición, "el derecho a la anualidad por retiro es uno personalísimo que nunca acrece el haber común". *Íd.*, pág. 377.

Luego, en *Rosa Resto,* supra, el Tribunal Supremo reafirma la naturaleza personalísima de las pensiones por retiro y dispone que el derecho a pensión por retiro "tiene un respetable contenido ético y moral y constituye un seguro de dignidad para el hombre o la mujer que habiendo dedicado al servicio público sus años fecundos, no debe encontrarse en la etapa final de su vida en el desamparo, o convertido en una carga de parientes o del Estado". *Íd.*, pág. 92. Asimismo, resolvió que las aportaciones que un cónyuge hace a su plan de retiro, vigente el matrimonio, son de naturaleza ganancial, por lo que la sociedad de gananciales tiene derecho a un crédito por el importe total de dichas aportaciones al momento de su disolución.

**III.**

En su primer planteamiento de error, la señora Castro López afirma que el foro de instancia incidió al resolver la controversia traída ante su consideración al amparo del estado de derecho de Puerto Rico y no a base de lo resuelto por la agencia federal *Office of Personnel Management* (OPM). Arguye que la *Sentencia* dictada por la Corte de Distrito del estado de Texas determinó un beneficio

distinto al que se adjudicó por el TPI y que esa decisión nunca fue apelada por el señor Herrera Díaz, por lo que advino final y firme. Asimismo, asegura que, según el ordenamiento federal, ésta tiene derecho a una participación en la pensión federal del señor Herrera Díaz, contrario a lo resuelto por la *Sentencia* apelada. Finalmente, sostiene que la legislación federal tiene supremacía sobre la ley local en cuanto al asunto en controversia.

Por su parte, el señor Herrera Díaz sostiene que el pleito de marras está regido exclusivamente por el estado de derecho de Puerto Rico por causa de que las partes contrajeron matrimonio en Puerto Rico y no otorgaron capitulaciones matrimoniales. Argumenta que por el solo hecho de haber contraído matrimonio en Puerto Rico, la regla aplicable para determinar si los bienes adquiridos durante el matrimonio son gananciales o privativos son las de Puerto Rico. Veamos.

Precisa enfatizar como punto de partida el corolario básico del Derecho apelativo que la apelación o revisión se da contra la sentencia o decisión apelada; es decir, contra el resultado y no contra sus fundamentos. *Pueblo v. Pérez*, 159 DPR 554, 566 (2003); *Asoc. Pesc. Pta. Figueras v. Pto. del Rey*, 155 DPR 906, 920 (2001); *Pueblo v. González Vega*, 147 DPR 692, 702 (1999); *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 182 (1992); *Sánchez v. Eastern Air Lines, Inc.*, 114 DPR 691, 695 (1983). Aunque algunos de los fundamentos de la sentencia recurrida sean erróneos, ello no constituye base para una revocación si por otros motivos puede sostenerse lo dispuesto en la sentencia. *Pueblo v. Pérez*, supra; *Sánchez v. Eastern Air Lines, Inc.*, supra; *Corrada v. Asamblea Municipal*, 79 DPR 365, 370 (1956).

El asunto ante nuestra consideración requiere la interpretación de aquella parte de la sentencia emitida por la Corte de Distrito de Texas en ocasión del divorcio entre las partes. Lo

primero que debemos enfatizar es el carácter finito del remedio concedido a la peticionaria. Específicamente, en ese entonces, la Corte de Distrito de Texas enfatizó en su sentencia:

> Upon full payment of benefit hereby assigned to Petitioner, the plan shall thereafter be discharged from all responsibility, obligation or duty with respect to Petitioner.

Es decir, el por ciento fijado en la sentencia a ser pagado en su día a la peticionaria contaba con un punto de partida y un fin. En cuanto al fin, colegimos que sería el día que se le pagara por completo el beneficio asignado mediante sentencia del plan de retiro del recurrido. Incluso aunque este falleciera. La corte de Distrito de Texas reconoció que los beneficios reunidos en el plan de retiro del recurrido que se habían acumulado durante el matrimonio con la peticionaria eran propiedad de la comunidad compuesta por ambos. De manera que ante el hecho de que el recurrido comenzó a cotizar para la pensión por retiro antes del matrimonio y continuó cotizando después del divorcio, la corte de Distrito de Texas estableció la siguiente fórmula para compensar a la peticionaria con la mitad de las aportaciones hechas a la pensión durante el matrimonio. Así ordenó que se calculara el beneficio que esta recibiría de la siguiente manera:

> [A] percentage of said accrued benefit determined by taking one half of the fraction calculated by dividing the total number of months Respondent was employed while married to Petitioner by the total number of months Respondent was employed be segregated, assigned and transferred to the exclusive beneficial interest of Petitioner.

> The benefits hereby assigned to Petitioner, together with the interests, earnings and gains thereon, shall be paid in the same form subject to the same options and restrictions as the benefits payable to Respondent under the terms of the plan.

Además, conminó a que los beneficios asignados a la peticionaria se le pagaran en la fecha más temprana que comenzara el plan a pagar los beneficios al recurrido bajo los

términos y condiciones del plan, independientemente de la continuidad del empleo de este último con cualquier patrono que patrocinara el plan, o el derecho del recurrido a recibir los beneficios adicionales bajo los términos del plan, según acumulados.

Para la solución de la controversia entre las partes, estas estipularon toda la evidencia documental sometida ante el foro recurrido, incluyendo los informes periciales de los respectivos peritos de las partes y acordaron que el caso quedaría sometido presentados los correspondientes memoriales de derecho en apoyo a sus respectivas posturas.

En múltiples instancias, la disposición de los bienes matrimoniales plantea conflictos de derecho internacional privado, entre ellos, el llamado conflicto móvil. El conflicto móvil se genera en aquellas situaciones en que los eventos normales de la vida alteran las circunstancias fácticas de una relación jurídica determinada, como, por ejemplo, casos en que ha habido cambios en el domicilio conyugal o del centro de intereses del matrimonio. Después del matrimonio hay dos aspectos relativos al conflicto móvil en las relaciones patrimoniales post matrimoniales: la clasificación de bienes y el procedimiento de división. Cada estado tiene sus propias normas. Las distintas jurisdicciones tienen normas diferentes en cuanto al derecho que rige los bienes durante el matrimonio o la distribución post divorcio. Por esa razón, la peticionaria cuestiona que el foro recurrido recurra a nuestras normas para la solución de una controversia que ella distingue como final y firme por la sentencia emitida hace años en Texas. Como anticipáramos, para resolver la controversia basta con interpretar las disposiciones de la sentencia de la Corte de Distrito de Texas. No obstante, a igual punto llegaríamos si aplicáramos normas de derecho internacional a la solución de nuestra

controversia. Las leyes relativas a los derechos y deberes de familia, o al estado, condición y capacidad legal de las personas, obligan a los ciudadanos de Puerto Rico, aunque residan en países extranjeros.[14] Los bienes muebles están sujetos a la ley de la nación del propietario; los bienes inmuebles, a las leyes del país en que están sitos.[15]

Es un hecho incontrovertido que las partes contrajeron matrimonio en Bayamón, Puerto Rico, el 29 de diciembre de 1973. Que debido a que no otorgaron capitulaciones matrimoniales, al momento de su matrimonio se constituyó la sociedad legal de gananciales. Y que dicho régimen era inmutable hasta la disolución de la sociedad. Que, una vez constituida la sociedad legal de gananciales, los bienes gananciales se consideran que son:

(1) Los adquiridos por título oneroso durante el matrimonio a costa del caudal común, bien se haga la adquisición para la comunidad, bien para uno solo de los esposos.

(2) Los obtenidos por la industria, sueldo o trabajo de los cónyuges o de cualquiera de ellos.

(3) Los frutos, rentas o intereses percibidos o devengados durante el matrimonio, procedentes de los bienes comunes o de los peculiares de cada uno de los cónyuges.[16]

Ahora bien, la pensión por retiro es un bien que se ha excluido de la masa común. Independientemente la forma en que se hayan adquirido, el derecho a la anualidad por retiro es uno personalísimo que nunca forma parte del haber común. No obstante, las aportaciones que un cónyuge haga a su plan de retiro, vigente el matrimonio, se reputan ganancial, razón por la cual la sociedad legal de gananciales tiene derecho a un crédito por el importe total de esas aportaciones al momento de su disolución

---

[14] 31 LPRA sec. 9
[15] 31 LPRA sec. 10. Los eventos fácticos y procesales de este caso ocurrieron durante la vigencia del Código Civil de 1930, según enmendado, 31 LPRA ant. sec. I et seq. Por consiguiente, nos amparamos en las disposiciones de dicho estatuto y su jurisprudencia interpretativa.
[16] 31 LPRA sec. 3641

y, si no hay suficientes bienes en la comunidad de bienes post ganancial para el pago de esas aportaciones, a la parte que no tendrá derecho a la pensión, el cumplimiento del pago de esas aportaciones se diferirá. Es esa misma aplicación la que efectuó la Corte de Distrito de Texas en su sentencia y a la que llega el foro recurrido, a través de la aplicación del estatuto personal y real del Código Civil y la jurisprudencia interpretativa del conflicto móvil.

Ante nuestra atención se encuentra cuestionado, específicamente, el beneficio que recibe la peticionaria en virtud de las aportaciones que se hicieran durante el matrimonio con bienes de la sociedad legal de gananciales. No se cuestiona el derecho que tiene o tuvo la peticionaria a recibir ese beneficio de pensión por retiro, sino la cuantía específica que ha recibido. Se cuestiona por el recurrido aseverando que, es más de lo que le corresponde, pues excede por mucho la cuantía que se entiende ésta aportó con la mitad que le correspondía de las aportaciones de la extinta sociedad legal de gananciales y que el pago que recibe disminuye la cuantía que este debe recibir.

"[A] percentage of said accrued benefit determined by taking one half of the fraction calculated by dividing the total number of months Respondent was employed while married to Petitioner by the total number of months Respondent was employed be segregated, assigned and transferred to the exclusive beneficial interest of Petitioner." La interpretación de esta oración es la génesis de la controversia. El perito de la peticionaria aduce que el beneficio que le corresponde a esta incluye todos los meses que trabajó el recurrido. No nos convence, todo lo contrario, la mera lectura explica que recibirá la mitad de la parte que resulte al dividir el número de meses que el recurrido trabajó mientras estuvo casado con la peticionaria por el número total de meses que el recurrido trabajó.

Coincidimos con el foro primario en que lo adjudicado años atrás es cónsono con la normativa en nuestra jurisdicción. Los beneficios que recibe la peticionaria han excedido aquellos otorgados por la sentencia de la Corte de Distrito de Texas y reconocidos por nuestro estado de derecho. Por lo cual, confirmamos el dictamen recurrido.

## IV.

Por lo antes expuesto se confirma la *Sentencia* apelada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones